[Civ. Nos. 23202, 23203.  Second Dist., Div. One.  Mar. 13, 1959.]

Estate of THERESA PADULA, Deceased.  JOHN PADULA et al., Plaintiffs; JOHN E. GLOVER, Appellant, v. J. O. WHITESIDE, as Executor, etc., Respondent.

[Two Cases.]

John E. Glover, in pro. per., for Appellant.

Covert & Covert and D. P. Covert for Respondent.

FOURT, J.—This is a consolidated appeal in two cases: in one case, John E. Glover is appealing from the judgment and order denying his motion for a new trial concerning objections filed by him to the current account and report of J. O. Whiteside, as executor of the estate of Theresa Padula; and in the other case John E. Glover is appealing from the judgment and order denying his motion for a new trial wherein with respect to a previously rejected claim against the estate of Theresa Padula he was awarded judgment in the sum of $4,000, but the payment thereof was made subordinate to the payment in full of the claim of one Louis Padula against said estate in the sum of $2,063.48.

On appeal it is urged that the trial court erred in failing and refusing to surcharge the executor in the sum of $1,665 for amounts heretofore paid in the estate proceeding for certain services which were rendered prior to the death of Theresa Padula in the guardianship proceeding, wherein the court allowed said fees but did not order them paid, said fees consisting of the sum of $1,000 paid to Donald Paul Covert as attorney for the guardian, the sum of $500 paid to J. O. Whiteside as guardian, and the sum of $165 paid to P. W. Croate as a real estate broker. It is further contended that none of the above items is entitled to any preference; that the estate is a deficiency estate and that each of the above items should be reduced pro rata with all general claims.

Appellant concedes that the court in the guardianship proceeding could have created a lien upon the assets in the guardianship estate, and that such a lien could have survived a transition of the original property into new assets which were the equivalent of the original property. Appellant states his

position to be as follows: "The only theory upon which that portion of the judgment can be sustained is upon the basis that the Court impliedly *ordered* and established an equitable lien in favor of the parties against the funds and assets which had come into the hands of the executor or held they already had one by operation of law *without an order.*" Appellant argues that the existence of power to create such a lien does not signify that a lien is created in the absence of an order creating it, and he then concludes that an order in the guardianship proceeding specifically establishing a lien upon the assets in the guardianship proceeding would necessarily be prerequisite to the existence of a lien on assets in the probate estate.

In *Estate of Clanton,* 171 Cal. 381 [153 P. 459], upon which appellant relies, the guardian rendered his account to the administrator, who admitted the existence of the guardian's claims. Objections thereto were filed by heirs. Certain of the expenditures had been made by the guardian without formal allowance previously made by the court, and the guardian had presented no creditor's claim against the estate of the deceased incompetent. The primary asset of the estate consisted of certain real property which was leased at the date of death of the incompetent. The guardian surrendered the property to the administrator who was authorized to and did sell the interest of the estate in said real property and the administrator received the proceeds therefrom. It was contended that the guardian's lien was destroyed by the sale. In its opinion, the court stressed the fact that the proceeding was in equity, and then stated (at p. 385) : "It is the guardian's duty after the death of the ward to settle his account with the court or with the administrator. (Code Civ. Proc., § 1754, subd. 3.) To be sure, the provisions of that section refer to obligations which may be enforced under the guardian's bond, but they accurately define the duties of the guardian. The court of equity having the entire matter before it, *could declare the existence of the lien upon the proceeds of the sale of the land,* and *could direct the payment of the amount due the guardian out of that sum.*" (Emphasis added.) The court further states (at p. 387) : "It was proper for the court to allow the expenses incurred in the settlement of the account, including the fees of the attorney for the guardian."

Appellant also cites *Estate of Schluter,* 209 Cal. 286 [286 P. 1008], in support of his contention. In this case the guardian was appointed by the Superior Court in Monterey County,

where the ward was temporarily present. Upon the death of the ward in Monterey County, the guardian presented her final account and an order was made settling the account and allowing her, as a charge and lien against the property and estate of said decedent, various items paid before and after her appointment as guardian for support and maintenance of said ward, together with fees for her services and those of her attorney. Probate proceedings were instituted in Los Angeles County, and a claim for said amounts, supplemented by a copy of the order made by the Monterey County court, was presented to and rejected by said executrix. Thereafter, upon motion filed by said guardian, an order was made subjecting the assets of the probate estate to said charge; and the executrix appealed, contending that the court was without jurisdiction to subject the estate to said lien. In affirming the order, it was stated (at p. 292) that the Monterey court "had jurisdiction to make said order extending respondent's lien to the Los Angeles property and the Los Angeles court acquired jurisdiction thereof subject to restrictions, orders or liens imposed upon it by said Monterey court; . . . ."

In *Erickson* v. *Smyth*, 108 F.Supp. 412, certain items, including a $75,000 fee paid for legal services rendered in obtaining the removal of a guardian, were claimed as deductible charges in ascertaining the net taxable estate for federal estate tax purposes. Court approval of the fee paid had not been sought in the guardianship proceeding or in the probate proceeding and the federal court in determining the enforceability of the claim under California law stated (at pp. 414 and 415): "After her father's death, plaintiff could have enforced her claim against his estate by presenting it in the final account in the guardianship court. Upon approval of the court, plaintiff would have had a lien for the amount of the claim against the assets of the estate in the hands of the executor. *Estate of Schluter* (1930), 209 Cal. 286 [286 P. 1008]; *Estate of Clanton* (1915), 171 Cal. 381 [153 P. 459]; *Guardianship of Jacobson* (1947), 30 Cal.2d 312 [182 P.2d 537]; *Estate of Eaton* (2d Dist. 1940), 38 Cal.App.2d 180 [100 P.2d 813]." It is true that the Erickson case was reversed in 221 F.2d 1, but the reversal was upon grounds other than the statement of law above set forth.

In *Riley* v. *Superior Court*, 49 Cal.2d 305 [316 P.2d 956], in a proceeding in certiorari wherein the administratrix petitioned to annul an order of the superior court awarding additional fees to a guardian and her attorney, it was contended

that the probate court lacked jurisdiction to award compensation to the guardian or her attorney or to declare a lien for such fees against the estate of the deceased ward. The additional fees related to services performed in connection with a prior appeal from the order discharging the guardian and allowing fees to the guardian and her attorney. In affirming the order declaring a lien for said fees upon assets which had been turned over to the administratrix, the court stated (at p. 312), ''We held in *Estate of Clanton*, 171 Cal. 381, 385 [153 P. 459], and *Estate of Schluter*, 209 Cal. 286, 292 [286 P. 1008], that the court has jurisdiction to award the guardian fees and to declare a lien in the guardian's favor even though all the property has been turned over to the administrator of the deceased ward's estate. Both of these cases made it clear that actual control of the ward's estate was not essential to the court's jurisdiction. The allowance for attorney fees and fees for the guardian are a charge against the estate of the ward (*Guardianship of Cookingham*, 45 Cal.2d 367, 375 [289 P.2d 16]).''

After the decision of the Supreme Court in the aforementioned certiorari proceeding, the administratrix then perfected her appeal involving the identical proceedings and documents and the matter was again reviewed in *Guardianship of Blair*, 163 Cal.App.2d 319 [328 P.2d 986]. The order was affirmed and the additional fees and expenses awarded to the guardian and additional fees awarded to her attorney were declared to be a lien upon the assets of the estate which had been turned over to the administratrix.

The reasonableness of the fees is not an issue in the proceeding engaging our attention. Said fees had been allowed for services rendered in the guardianship proceeding, but were not paid therein. Said fees had heretofore been paid from the assets of the probate estate. Suffice it to say that under the circumstances, the trial court clearly had the power to approve the payments made.

Appellant next contends that the trial court erred in allowing the claim of Louis Padula in the amount of $2,063.48 as a general claim against the estate. Appellant argues that the $518 paid direct to Dr. Matousek and the $233 paid for a burial plot in Calvary cemetery and the payments from a joint account maintained by Louis Padula with the guardian for maintenance of the ward in the sum of $1,210.95, were not loans or advances made to the guardianship estate. By an agreement dated January 24, 1954, in which the claim of the

estate of Joseph Padula, deceased, and Theresa Padula against Ralph Padula was compromised, Louis Padula in his individual capacity agreed to relinquish his right to reimbursement from his mother's guardianship estate for funds theretofore loaned or advanced to his mother or to her guardian. From this it can be inferred that the parties to the agreement, including Ralph Padula, appellant's assignor, contemplated that Louis Padula intended to assert a claim for reimbursement for any future loans or advances to his mother or to her guardian and impliedly acquiesced therein. Considerable testimony and documentary evidence was presented to the trial court pertaining to what was received by Louis Padula from his mother and what was paid out by him for his mother's benefit and to explain the basis used in the computation of his creditor's claim.

In our opinion this claim was supported by substantial evidence and the finding of the trial court that it should be allowed should not be disturbed on appeal.

■ Appellant's judgment of $4,000 constituted a general claim against the estate and in view of the terms of the aforesaid agreement of January 24, 1954, to which appellant's assignor was a party, it was proper for the trial court to determine that payment to appellant should not be made "unless and until payment in full has been made to Louis Padula of his claim in the amount of $2,063.48."

It is not necessary for us to consider the argument presented by respondent to the effect that the trial court erred in awarding a $4,000 judgment in favor of appellant on the rejected claim assigned to him by Ralph Padula. ■ Respondent is not a party appealing in this case, and "It is well settled that on appeal errors affecting a party who does not appeal will not be reviewed, even though excepted to by him in the trial court and included in the bill of exceptions." (*Salter* v. *Ulrich,* 22 Cal.2d 263, 268 [138 P.2d 7, 146 A.L.R. 1344].)

The judgments and orders appealed from are, and each of them is, affirmed.

White, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied April 9, 1959, and appellant's petition for a hearing by the Supreme Court was denied May 6, 1959.