[No. B020873. Second Dist., Div. Three. July 8, 1987.]

CALIFORNIA INSURANCE GUARANTEE ASSOCIATION,
Plaintiff and Appellant, v.
VISUTE LIEMSAKUL, Defendant and Respondent.

**COUNSEL**

Clausen, Harris & Campbell, Marie D. Clause and Gregory P. Orland for Plaintiff and Appellant.

Howard J. Stechel for Defendant and Respondent.

**OPINION**

**KLEIN, P. J.**—Plaintiff and appellant California Insurance Guarantee Association (CIGA) appeals from a declaratory judgment in favor of defendant and respondent Visute Liemsakul (Liemsakul).

Because CIGA is entitled to a credit in the *full* amount of Liemsakul's uninsured motorist (UM) coverage, the trial court erred in limiting the credit to the amount *actually recovered* under said coverage. ■ ■■■ However, for the reasons stated, the appeal is dismissed.[1]

---

[1] At oral argument, the parties moved to dismiss the appeal on the ground they had settled the case, rendering the appeal moot.

## Factual & Procedural Background

On July 6, 1982, a car driven by Liemsakul collided with a truck being driven by Manuel Barrios (Barrios) and owned by Custom Truck Service, a corporation (Custom), Barrios's employer.

On July 14, 1982, Liemsakul filed a complaint for personal injuries, naming as defendants Custom, Barrios, and others not relevant here. At the time of the accident, Custom and Barrios were insured by Western Carriers Insurance Exchange (Western). Subsequently, on May 12, 1983, Western was declared insolvent and ordered liquidated, giving rise to the involvement of CIGA.[2]

At the time of the subject accident, Liemsakul was an insured of State Farm Mutual Insurance Company (State Farm) under a policy that included UM coverage.[3] Although that coverage had a limit of $25,000, on January 13, 1984, Liemsakul settled his claim with State Farm for $15,000.

On February 28, 1985, CIGA filed a complaint for declaratory relief to reduce Liemsakul's "covered claim" against CIGA by the amount of his UM coverage. CIGA sought a declaration that pursuant to Insurance Code section 1063.2, subdivision (c)(1),[4] it was entitled to a $25,000 credit, the amount potentially "recoverable" under Liemsakul's State Farm policy, not the $15,000 Liemsakul actually recovered in settlement.

The matter was tried August 5, 1985. The trial court held CIGA and Western's insureds, Custom and Barrios, were entitled to a credit in the sum of $15,000 against any judgment obtained by Liemsakul in his personal injury action then pending against Custom and Barrios.

---

"It is now established law that where . . . issues on appeal affect the general public interest . . . , and there is reasonable probability that the same questions will again be litigated and appealed, an appellate court may, although the appeal be subject to dismissal, nevertheless adjudicate the issues involved. [Citations.]" (*People* v. *West Coast Shows, Inc.* (1970) 10 Cal.App.3d 462, 468 [89 Cal.Rptr. 290].)

We accordingly elect to pass upon the issues raised herein, as they are likely to recur.

[2] CIGA is a compulsory association requiring most state regulated insurance companies to be members, and provides insurance against loss arising from the failure of an insolvent insurer to discharge its obligations under its policies. (*Central National Ins. Co.* v. *California Ins. Guarantee Assn.* (1985) 165 Cal.App.3d 453, 458 [211 Cal.Rptr. 435].)

[3] UM coverage includes protection for an accident involving "an insured motor vehicle where the liability insurer thereof is unable to make payment with respect to the legal liability of its insured within the limits specified therein because of insolvency." (Ins. Code, § 11580.2, subd. (b)(2).)

[4] All subsequent statutory references are to the Insurance Code, unless otherwise indicated.

CIGA appeals.[5]

## CONTENTIONS

CIGA contends (1) any claim Liemsakul may make upon it must be reduced by the full amount of Liemsakul's UM coverage with State Farm; and (2) the trial court's allowing Liemsakul's attorney to testify why the claim against State Farm was settled for less than the policy limits was prejudicial error.

## DISCUSSION

### 1. *Standard of review.*

■ "The governing law is stated in *Mefford* v. *City of Tulare* [1951] 102 Cal.App.2d 919 [228 P.2d 847], at page 922, as follows: 'The purpose of declaratory relief is to liquidate uncertainties and controversies which might result in future litigation and whether a determination is proper in an action for declaratory relief is a matter within the trial court's discretion. ■■■■ ■ Unless a clear abuse of discretion is shown, the trial court's decision will not be disturbed on appeal.' " (*Roberts* v. *Reynolds* (1963) 212 Cal.App.2d 818, 827 [28 Cal.Rptr. 261].)[6]

■ However, the interpretation of a statute is a question of law, and we are not bound by the trial court's interpretation. (*California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699 [170 Cal.Rptr. 817, 621 P.2d 856]; *Shoban* v. *Board of Trustees* (1969) 276 Cal.App.2d 534, 541 [81 Cal.Rptr. 112].)

Utilizing these principles, we look anew at the statute with due consideration being given to the trial court's interpretation.

### 2. *Entire amount of UM coverage applies to reduce liability of CIGA.*

#### a. *Introductory statement.*

CIGA was created in 1969 to protect policyholders of insolvent insurers and third parties claiming under policies issued by insurers that become

---

[5] Liemsakul also filed an appeal, but subsequently sought a dismissal thereof. On September 10, 1986, this court entered an order granting Liemsakul's voluntary dismissal of his appeal.

[6] The filing by CIGA of a complaint in intervention in the underlying action might have been preferable. However, the trial court acted within its discretion in finding a justiciable controversy and entertaining CIGA's separate action for declaratory relief.

insolvent. (§ 1063 et seq.; *E. L. White, Inc.* v. *City of Huntington Beach* (1982) 138 Cal.App.3d 366, 370-372 [187 Cal.Rptr. 879]; 1 Cal. Insurance Law (1987 Rev.) § 7.10[1], p. 7-54.) Each time an insurer becomes insolvent, CIGA assesses its member insurers to the extent necessary to pay covered claims of the insolvent insurer as well as adjustment costs. (§ 1063.5.) CIGA's role is somewhat akin to that of the Federal Deposit Insurance Corporation in banking, and serves to enhance public confidence in the insurance industry. (1 Cal. Insurance Law, *supra,* § 7.10[1], p. 7-54.)

The essential duty of CIGA is to pay "covered claims" of insolvent insurers. (§ 1063.2.) However, "covered claims" are not coextensive with an insolvent insurer's obligations under its policies. (*Saylin* v. *California Ins. Guarantee Assn.* (1986) 179 Cal.App.3d 256, 262 [224 Cal.Rptr. 493].) Section 1063.1, subdivision (c) defines "covered claims" and also enumerates various claims whicn may arise but which are *not* covered.

Section 1063.2, subdivision (c)(1), on which this case turns, provides a further limitation on "covered claims." Said subdivision states in relevant part: "If damages against uninsured motorists are *recoverable* by the claimant from his or her own insurer, such damages *recoverable* shall be a credit against a covered claim payable under this article." (§ 1063.2, subd (c)(1), italics added.)

■ The salient question before us is the definition of the term "recoverable" as used in the statute. CIGA argues "recoverable" refers to the amount *capable of being recovered,* that is to say, the full amount of the UM coverage. Contrarily, Liemsakul maintains the credit is limited to the amount he *actually recovered* from State Farm.

b. *Principles of statutory construction.*

■ "It is a settled principle in California law that 'When statutory language is . . . clear and unambiguous there is no need for construction, and courts should not indulge in it.'" (*In re Waters of Long Valley Creek Stream System* (1979) 25 Cal.3d 339, 348 [158 Cal.Rptr. 350, 599 P.2d 656].) However, despite the general rule that ambiguity is a condition precedent to interpretation, "'[t]he literal meaning of the words of a statute may be disregarded to avoid absurd results or to give effect to manifest purposes that, in the light of the statute's legislative history, appear from its provisions considered as a whole.'" (*County of Sacramento* v. *Hickman* (1967) 66 Cal.2d 841, 849, fn. 6 [59 Cal.Rptr. 609, 428 P.2d 593].)

c. *Application here.*

Our research has not disclosed any cases that have construed the meaning of "recoverable" as used in section 1063.2, subdivision (c)(1).

Webster's New International Dictionary (2d ed. 1942) at page 2081, defines "recoverable" as "[c]apable of being recovered, or of recovering; that may be recovered." Further, 1 Eisler, California Uninsured Motorist Law (4th ed. 1986) section 8.70, page 8-41, assigns "recoverable" its plain and usual meaning. Eisler observes: "It is noteworthy that the statute uses the term 'recoverable,' implying any recovery that might have been possible, not just recovery that was actually made." (*Ibid.*)

■ Because the statute is not ambiguous, our remaining task is to determine whether an interpretation based on the literal meaning of "recoverable" leads to a result which is absurd or inconsistent with the purpose of the statute. For the reasons set forth below, we conclude the plain meaning of "recoverable" comports with the CIGA scheme (§ 1063 et seq.), while the interpretation urged by Liemsakul would cause mischief.

Were we to adopt Liemsakul's proffered interpretation of "recoverable" as meaning "actually recovered," a claimant could settle with his or her own insurer for a nominal sum, with the expectation of ultimately being fully compensated by CIGA. ■ However, CIGA exists to protect the public from losses occasioned by an insolvent insurer, and to serve as an insurer of last resort, when no secondary insurer is available. (*Central National Ins. Co.* v. *California Ins. Guarantee Assn., supra,* 165 Cal.App.3d at p. 458.) "CIGA covers only claims which are not covered by other private insurance. (Ins. Code, §§ 1063.2, subd. (a), 1063.1, subd. (c)(7)(a).)" (*Reserve Insurance Co.* v. *Pisciotta* (1982) 30 Cal.3d 800, 814, fn. 7 [180 Cal.Rptr. 628, 640 P.2d 764].) It is not CIGA's role to serve as an alternative to the claimant's pursuing the matter with his or her own allegedly recalcitrant insurer.

■ Liemsakul argues that to compel a claimant to obtain the maximum possible under the available UM coverage is to impose a great hardship on a tort victim. However, his position overlooks the existence of the contingent fee, as well as the powerful deterrent of the cause of action of insurance bad faith.[7] If Liemsakul settled too cheaply with State Farm, he cannot recover from CIGA that which he allegedly should have obtained from his own insurer.

To relieve a claimant from the burden of maximizing his or her UM recovery would serve as a windfall to the UM insurer. ■ In creating

---

[7]Further, section 790.03, subdivision (h)(5), prohibits insurers from failing to "[attempt] in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear[,]" while subdivision (h)(6), prohibits insurers from "[c]ompelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds, when such insureds have made claims for amounts reasonably similar to the amounts ultimately recovered."

CIGA, however, it was the Legislature's intent to protect the public, not to confer a benefit upon an insurance company. (*E. L. White, Inc.* v. *City of Huntington Beach, supra,* 138 Cal.App.3d at pp. 371-372.) ■ Were the credit here limited to the $15,000 actually recovered, and were Liemsakul to receive a judgment of $50,000, CIGA would be compelled to pay $35,000 as a "covered claim," rather than the required $25,000. Under such a scenario, CIGA would in effect be subsidizing State Farm, a solvent insurer, to the tune of $10,000, a result antithetic to the CIGA scheme.

3. *Liemsakul's further arguments unavailing.*

■ Liemsakul challenges CIGA's standing to seek a declaratory judgment that Custom and Barrios are entitled to a credit of $25,000 as to any judgment later obtained against them by Liemsakul in the underlying action. Liemsakul avers CIGA is limited to securing a declaration of its own rights. However, CIGA's complaint put section 1063.2 in issue, and the interpretation of said statute, as a legal question, was essentially the sole issue below. In construing the statute, the trial court determined CIGA *and* Custom and Barrios, as the insureds of an insolvent insurer, were entitled to credit under the statute.

■ In his *respondent's* brief as the nonaggrieved party, Liemsakul further contends the credit for the UM coverage applies solely to CIGA, not to the alleged tortfeasors. Accordingly, Liemsakul seeks a modification of the judgment, so that it provides CIGA alone is entitled to a $15,000 credit, leaving him free to recover fully against Custom and Barrios, without regard to his UM coverage.

His contention is not properly before this court. If Liemsakul is aggrieved by the declaratory judgment, he should have pursued his appeal from said judgment, as it is well settled "that '. . . on appeal errors affecting a party who does not appeal will not be reviewed, . . .'" (*Mott* v. *Horstmann* (1950) 36 Cal.2d 388, 393 [224 P.2d 11]; accord *Estate of Padula* (1959) 168 Cal.App.2d 680, 685 [336 P.2d 186].) However, we address said issue solely for purposes of amplification.

a. *UM credit applies to insureds of insolvent insurer, as well as to CIGA.*

Liemsakul repeatedly argues CIGA alone is entitled to the UM credit, and that such credit should not inure to the benefit of the alleged tortfeasors, Custom and Barrios. However, as discussed *ante,* the CIGA scheme was enacted to protect the insured *public,* which includes the insureds of

insolvent insurers, as well as third-party claimants. (*E. L. White, Inc.* v. *City of Huntington Beach, supra,* 138 Cal.App.3d at pp. 371-372.)

 ██ ██ ██ Liemsakul relies on *Helfend* v. *Southern Cal. Rapid Transit Dist.* (1970) 2 Cal.3d 1, 9-10 [84 Cal.Rptr. 173, 465 P.2d 61, 77 A.L.R.3d 398], for the proposition that a tortfeasor should not garner the benefits of the providence of a victim who has invested years of insurance premiums.[8] "The collateral source rule expresses a policy judgment in favor of encouraging citizens to purchase and maintain insurance for personal injuries and for other eventualities" (*id.,* at p. 10), and averts the perceived injustice in allowing a tortfeasor to take advantage of the thrift and prescience of the victim in having paid the premium. (*Ibid.*)

Liemsakul argues to apply the UM credit to the alleged tortfeasors as well as to CIGA is to grant Custom and Barrios a windfall arising from the fortuity that Liemsakul possessed UM coverage. However, Liemsakul overlooks the fact that, like him, Custom and Barrios exercised prudence in purchasing insurance. Through no fault of their own, Western became insolvent. To apply the UM credit to the insureds of an insolvent insurer as well as to CIGA is not to confer a windfall upon Custom and Barrios. Rather, such application merely protects them from the insolvency of their insurer, consonant with the CIGA scheme.

b. *Constitutional argument fails.*

 Liemsakul also submits if section 1063.2, subdivision (c)(1), requires an injured party like himself to suffer a credit in the amount *potentially* rather than *actually* recovered under the UM coverage, it is an unconstitutional taking of property. The contention is without merit as nothing has been taken. The statute merely compels an injured party to look to his or her UM insurer for a specified portion of the total recovery.

CONCLUSION

The amount of the credit under section 1063.2, subdivision (c)(1), is the amount potentially recoverable under the UM coverage. The credit inures to the benefit of the insureds of the insolvent insurer, as well as to CIGA.

---

[8] *Helfend* reaffirmed the "collateral source rule," which provides that if an injured party receives some compensation from a source wholly independent of the tortfeasor, such payment is not deducted from the damages which the plaintiff would otherwise collect from the tortfeasor. (*Id.,* at p. 6.)

## DISPOSITION

The appeal is dismissed. Each party to bear respective costs on appeal.

Lui, J., and Danielson, J., concurred.