[No. B054742. Second Dist., Div. Three. Feb. 19, 1992.]

GEORGE TOBIN, Plaintiff and Respondent, v.
RICHARD ORIS, et al., Defendants and Appellants;
RICH-MIL INVESTMENTS, L.P., et al., Objectors and Appellants.

## COUNSEL

Selvin, Weiner & Ruben, Beryl Weiner and Russell W. Clampitt for Defendants and Appellants and for Objectors and Appellants.

Musick, Peeler & Garrett and Harry W. R. Chamberlain II for Objectors and Appellants.

Herbert L. Michel, Jr., for Plaintiff and Respondent.

## OPINION

CROSKEY, J.—The defendants and appellants Richard Oris and Milly Oris (collectively the Orises) appeal from a summary judgment entered on September 28, 1990, which awarded damages in excess of $1 million to the plaintiff and respondent George Tobin (herein Tobin). Subsequently, on November 9, 1990, the trial court granted Tobin's motion to add as judgment debtors the appellants, the Richard Oris and Milly Oris Living Trust (herein the Trust) and Rich-Mil Investments, L.P., a California limited partnership (herein Rich-Mil). Finally, the appellants, Selvin, Weiner & Ruben, Beryl Weiner and Russell W. Clampitt (current counsel for the Orises and hereinafter collectively Selvin, Weiner) and Kenneth I. Persion and Kenneth I. Persion, Inc. (the prior counsel for the Orises and hereinafter collectively Persion) appeal the imposition of certain sanction orders imposed by the trial court.[1]

The summary judgment was based *entirely* upon a prior order of the trial court directing that certain dispositive facts be deemed admitted pursuant to Code of Civil Procedure section 2033, subdivision (k).[2] As we conclude that (1) the trial court erroneously construed and applied sections 1013a and

---

[1]This appeal is in fact the product of five separate notices of appeal, four of which have heretofore been consolidated by order of this court under the single case number, No. B054742:

1. The appeal from the summary judgment granted on September 28, 1990;

2. An appeal from the order of November 9, 1990, adding the Trust and Rich-Mil as judgment defendants;

3. An appeal of the order of the trial court, dated October 2, 1990, imposing sanctions of $5,000 against the Orises and their counsel; and

4. An appeal of the order of the trial court dated November 9, 1990, imposing sanctions of $2,125 against counsel for the Orises.

In addition, a fifth Notice of appeal was filed with respect to the trial court's order of January 23, 1991, imposing sanctions of $3,175 against counsel for the Orises. This appeal was assigned No. B057240 and was consolidated with case No. B054742 by the order of this court on May 23, 1991.

[2]Unless otherwise indicated, all statutory references are to the Code of Civil Procedure.

Section 2033, subdivision (k) provides:

"(k) If a party to whom requests for admission have been directed fails to serve a timely response, that party thereby waives any objection to the requests, including one based on privilege or on the protection for work product under Section 2018. However, the court, on motion, may relieve that party from this waiver on its determination that (1) the party has

2033, subdivision (k), and (2) the "deemed admitted" order should not have been made, the summary judgment subsequently entered is without legal support. This conclusion necessarily compels reversal of not only the judgment, but also the balance of the orders made by the trial court which are the subject of these consolidated appeals.

## FACTUAL AND PROCEDURAL BACKGROUND

On November 20, 1987, Tobin filed a complaint against the Orises seeking compensation for damage to a commercial building which he owned in North Hollywood, California. The Orises owned property adjacent to Tobin and he alleged that, due to their negligence, rain water flowed from their property onto his, causing damage to his building and interrupting his business.[3]

The Orises filed an answer in propria persona in March of 1988 in which they denied the material allegations of Tobin's complaint and raised the affirmative defense that Tobin's damages were the "sole and exclusive result of his own actions; inactions and own negligence." Subsequently, in June of 1989 the Orises obtained leave to file a cross-complaint for indemnity and declaratory relief against the several parties who had been involved in the construction work on their property at the time of the damage to Tobin's building. By this time they had retained and were represented by Attorney Persion.

On March 30, 1990, Tobin served on the Orises' counsel separate requests for admission in which he asked each of them to respond to 77 admission

---

subsequently served a response that is in substantial compliance with subdivision (f), and (2) the party's failure to serve a timely response was the result of mistake, inadvertence, or excusable neglect.

"The requesting party may move for an order that the genuineness of any documents and the truth of any matters specified in the requests be deemed admitted, as well as for a monetary sanction under Section 2023. *The court shall make this order, unless it finds that the party to whom the requests for admission have been directed has served, before the hearing on the motion, a proposed response to the requests for admission that is in substantial compliance with paragraph (1) of subdivision (f).* It is mandatory that the court impose a monetary sanction under Section 2023 on the party or attorney, or both, whose failure to serve a timely response to requests for admission necessitated this motion." (Italics added.)

[3]Tobin also sued his own insurance carrier and broker and certain other defendants who were allegedly involved in a construction project on the Orises' property. Several of those other defendants filed cross-actions against the Orises. These other claims are unaffected by the summary judgment entered against the Orises and remain to be resolved at trial.

requests.[4] The responses were due to be served by May 5, 1990. However, the Orises' counsel, Persion, failed to serve the required responses by that date.

In May 15, 1990, Tobin filed a motion pursuant to section 2033, subdivision (k), to have 65 of the 77 requests deemed admitted.[5] Among the requests as to which Tobin sought such a ruling were five requests (requests Nos. 52 through 56) which, if admitted, would eliminate any defense to Tobin's claim and would conclusively resolve the issue of the *amount* of the damages suffered.[6]

This motion was opposed by the Orises. Such opposition included proposed joint responses to all of the requests, including Nos. 52 through 56 (the response to *each* of these critical requests was: "Denied"). The opposition documents, including the proposed responses, were served by mail on Tobin's counsel on May 24, 1990.[7] This date was approximately 20 days after the responses were due and 9 days after Tobin's motion was filed. However, in serving these papers the Orises' counsel, Persion, failed to include the *original* responses and verifications to the requests as required by section 2033, subdivision (h). The signature pages of the copies of the responses mailed by Persion were conformed only (i.e., the signature lines contained the symbol "/s/").

In reply, and in further support of his motion, Tobin argued in a supplemental memorandum to the trial court that the Orises had (1) failed to serve the original signed verifications and therefore had, in effect, served no responses, (2) filed a *joint* response rather than the separate response which

---

[4]The Orises refer to this document as the "second set" of admission requests. However, Tobin states that it was his initial request. The difference is not significant, but it does explain what appears to be inconsistent references by the parties. We also note that the record on appeal does not contain a copy of the set of requests specifically directed to Milly. We therefore assume that the "separate" requests sent to each of the Orises were identical.

[5]For reasons that are not apparent, Tobin omitted 12 requests from his motion. The Orises note in their brief that these admission requests were relevant to the possible liability of others for the damages which Tobin is alleged to have sustained.

[6]The text of these five critical requests is as follows:

"52.   All of the allegations against You contained in plaintiff's complaint are true.

"53.   You have no defenses to the allegations alleged against you in plaintiff's complaint.

"54.   Plaintiff is entitled to special damages in the amount of $856,456.00 as a result of the loss as alleged against You in plaintiff's complaint.

"55.   Plaintiff is entitled to general damages in the amount of $350,000.00 as a result of the loss as alleged against You in plaintiff's complaint.

"56.   You are the sole proximate cause of plaintiff's damages as alleged against You in plaintiff's complaint."

[7]There is no dispute that they were received by Tobin's counsel within one or two days after May 24, 1990.

he had requested[8] and (3) included unintelligible responses to *three* of the requests.[9]

Orises' counsel responded to the verification issue by mailing the original signed responses to Tobin's counsel by certified mail on June 22, 1990. However, the original proof of service (dated May 24, 1990) for these documents was not replaced with a new one reflecting a June 22 posting. Nonetheless, Tobin conceded to the trial court and in his brief to this court that his counsel did in fact receive the original verified responses on June 25, 1990. This was a month before the hearing date on Tobin's motion.

On May 25, 1990, the trial court (pursuant to § 639, subd. (e)), had ordered that all discovery matters be referred to the Honorable Jay R. Ballantyne (a retired Justice of the Court of Appeal, Fifth District; herein the referee). Tobin's motion to have the requests for admission deemed admitted

---

[8]The first paragraph of the proposed responses by the Orises read:
"COMES NOW RICHARD ORIS AND MILLY ORIS, defendants herein, who answer plaintiffs second set of Request for Admissions . . . ."
The verification at the end of the proposed responses read:
"The undersigned have read the above Answers to Request for Admissions (Set Number Two) and state under penalty of perjury that said statements are true of their own knowledge, except as to those matters that are stated upon information and belief, and as to those matters they believe them to be true.
"Dated: May 24, 1990
"/s/_____
"RICHARD ORIS, Defendant and
"Cross-Complainant
"/s/_____
"MILLY ORIS, Defendant and
"Cross-Complainant"

[9]The three admission requests and the Orises' responses which were claimed by Tobin to be unintelligible were:
"47.  As of November 25, 1986 you had a duty to ensure your PROPERTY had proper drainage for WATER so as so [sic] not to cause harm to plaintiff's property located at 11337 Burbank Boulevard. [¶] Response: [¶] Admitted and so constructed but possibly unknown."
"48.  As of November 25, 1986 You had a duty to insure that all phases of the construction of the IMPROVEMENTS on you [sic] PROPERTY were performed competently. [¶] Response: [¶] Admitted but unknown."
"51.  As of November 25, 1986 You did not instruct persons engaged to improve your PROPERTY that at all times during the construction of the IMPROVEMENTS your PROPERTY should be provided with a proper means for the drainage of WATER so as not to cause water damage to plaintiff's property located at 11337 Burbank Boulevard. [¶] Defendants responded: [¶] Admitted but unknown."
In addition, Tobin, in his brief before this court, has added a fourth response which he claims is subject to the same objection:
"Request 25: [¶] As of November 25, 1986 You failed to provide fine grading of the utility trench during construction at the PROPERTY. [¶] Response: [¶] Admitted, as a possibility."

was set for hearing before him on July 25, 1990.[10] Following the hearing, the referee recommended to the trial court that the motion be granted as to the 65 requests for admission set forth in the motion. Although he conceded that the Orises had in fact served responses to the requests for admission prior to the hearing, the referee concluded that they were inadequate and should be disregarded for the following three reasons:

1. The submitted responses "are unintelligible and force [Tobin] to speculate as to their meaning." For reasons which are not apparent, the referee did not limit this general characterization to the three of seventy-seven responses which were cited in Tobin's motion (see fn. 9, *ante*);

2. The responses were served on May 24, 1990, without the required *signed* verifications; and

3. When the original verifications were subsequently served on June 22, 1990, the proof of service attached thereto falsely indicated that they had been mailed on May 24, 1990. The referee was not impressed with the Orises' explanation that the original proof of service had, through oversight, not been replaced with a new one, before the original verified responses were actually mailed on June 22. Relying on the provisions of section 1013a, subdivision (3),[11] the referee concluded that since the postmark on the envelope (June 22) was more than one day after the date on the proof of

---

[10]Tobin's motion had originally been calendared for June 8, 1990, but was continued to July 17 and then, at the request of the Orises, to July 25.

[11]Section 1013a provides in pertinent part:

"*Proof of service by mail may be made* by *one* of the following methods:

"(1)   An affidavit setting forth the exact title of the document served and filed in the cause, showing the name and residence or business address of the person making the service, showing that he or she is a resident of or employed in the county where the mailing occurs, that he or she is over the age of 18 years and not a party to the cause, and showing the date and place of deposit in the mail, the name and address of the person served as shown on the envelope, and also showing that the envelope was sealed and deposited in the mail with the postage thereon fully prepaid.

"(2).   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"(3)   An affidavit setting forth the exact title of the document served and filed in the cause, showing (A) the name and residence or business address of the person making the service, (B) that he or she is a resident of, or employed in, the county where the mailing occurs, (C) that he or she is over the age of 18 years and not a party to the cause, (D) that he or she is readily familiar with the business' practice for collection and processing of correspondence for mailing with the United States Postal Service, (E) that the correspondence would be deposited with the United States Postal Service that same day in the ordinary course of business, (F) the name and address of the person served as shown on the envelope, and the date and place of business where the correspondence was placed for deposit in the United States Postal Service, and (G) that the envelope was sealed and placed for collection and mailing on that date following ordinary business practices. *Service made pursuant to this paragraph, upon motion of a party served, shall be presumed invalid if the postal cancellation*

service document (May 24), then the service was presumed invalid and, therefore, there had been no valid service by the Orises of verified responses and no justifiable excuse for their failure to do so.

Based on these determinations, the referee recommended that *all 65* requests for admissions be deemed admitted as requested by Tobin and that the Orises and their counsel be sanctioned in the amount of $1,500.[12] The Orises filed a motion on August 1, 1990, to set aside the referee's report and such motion was set for hearing on August 24, 1990. However, without waiting to consider that motion, the trial court signed, on August 9, 1990, an order adopting the referee's findings and recommendations in full.[13]

Subsequently, on August 28, 1999, Tobin filed a motion for summary judgment which was *entirely* based on the matters deemed admitted, particularly the five dispositive requests (Nos. 52 through 56, see fn. 6, *ante*).[14] This motion was opposed by the Orises who filed evidentiary declarations from themselves and certain expert witnesses (a structural engineer and an accountant) disputing both the issues of liability and damages. Tobin argued that the matters deemed admitted were binding on the Orises and were conclusive on these issues.

The trial court agreed with Tobin[15] and, on September 28, 1990, summary judgment was entered against the Orises and in favor of Tobin for the sum of $1,206,456, less offsets for settlements received from "joint tortfeasor defendants" in the amount of $257,500 "with prejudgment interest thereon

---

*date or postage meter date on the envelope is more than one day after the date of deposit for mailing contained in the affidavit.*

"(4). . . . . . . . . . . . . . . . . . . . . . . . ."

(Italics added.)

[12]This sanction was promptly paid by the Orises' then counsel, Persion. No issue is raised herein as to its propriety. Indeed, under the provisions of section 2033, subdivision (k), a monetary sanction against the Orises and/or their attorney was mandatory irrespective of how the court ruled on Tobin's "deemed admitted" motion.

[13]At the hearing on August 24, the trial court refused to set aside the referee's report or its order of August 9 approving and adopting the same. At that time, the court stated, "I have heard absolutely nothing new, as to the facts, law, evidence—nothing with respect to this matter . . . [¶] There certainly has been no showing whatsoever of any excusable negligence." However, as we point out below, the issue was not whether a showing of excusable neglect had been made, but rather whether the "deemed admitted" motion was properly granted, given the clear provisions of section 2033, subdivision (k).

[14]While the 60 other requests for admission went to evidentiary issues which may have been relevant to the issues of liability or damages, their admission, even if otherwise proper, did not have the conclusive effect of the forced admission of these 5 dispositive requests.

[15]The transcript of proceedings held on September 28, 1990 make it clear that the trial court relied expressly on the admission of the five dispositive requests in concluding that no issue of material fact remained and that summary judgment was proper.

from March 3, 1989 through September 28, 1990 in the amount of $149,233.07."[16]

Subsequently, on November 9, 1990, on Tobin's motion, the Trust and Rich-Mil were added as judgment debtors. The court found that there was a unity of interest between the Orises and these two entities, and that there was no distinction between them. It concluded that "adherence to the fiction of a separate existence would promote injustice." (See § 187; *Dow Jones Co.* v. *Avenel* (1984) 151 Cal.App.3d 144, 147-149 [198 Cal.Rptr. 457].)

It is from this summary judgment and the order of November 9, 1990, amending the judgment to add the Trust and Rich-Mil as judgment debtors, that the Orises, the Trust and Rich-Mil have filed this timely appeal.[17]

In addition, the Orises, and their counsel, also appeal from three other orders made by the trial court:

1. On September 28, 1990, the trial court imposed a sanction of $5,000 on the "defendants and/or their counsel" under section 128.5.[18] This sanction was apparently for bringing two motions under sections 473 and 1008 to set aside the referee's report previously approved by the court on August 9, 1990. The court noted that it had already ruled on this matter on August 24, 1990. It concluded that the two motions, not containing any new information, were made without legal authority and were therefore frivolous;

2. On November 9, 1990, the court ruled that the motion of the Orises to tax the cost bill previously filed by Tobin was without merit, frivolous and

---

[16]This judgment was entered without Tobin ever being required to provide an *evidentiary* showing that the Orises had any liability to him or that he had in fact legally suffered damages as a proximate result of any act or omission of the Orises. Thus, the Orises are correct when they state in their brief that they would have been better off had they simply failed to answer Tobin's complaint and suffered a default. At least, in that circumstance, Tobin would have been required to present some evidence on these issues.

[17]In their notices of appeal as to these two matters, the Orises (and, with respect to the appeal from the amendment to the judgment, the Trust and Rich-Mil) also state that an appeal is being taken from a "Temporary Restraining Order" issued by the trial court on November 9, 1990. This order (which was not "temporary" at all, but rather a permanent injunction) restrained the Orises, the Trust and Rich-Mil (except as might be required to obtain an appeal bond) from "transferring, encumbering, assigning and/or hypothecating," without prior court approval obtained on noticed motion, (1) any interest in their real property and (2) cash assets in excess of $5,000. In light of our disposition of this matter, this issue will become moot. Even if otherwise valid, such a restraining order can have no other purpose or justification than as an order in aid of a judgment. As the judgment will be reversed by this decision, we will include a direction to the trial court to vacate the restraining order.

[18]The written order imposing the $5,000 sanction was not signed and filed until October 2, 1990.

brought in bad faith. In its order the court also noted that once again the Orises had also made a request that the judgment be vacated. The court denied the judgment and imposed a sanction of $2,125 against the Orises' counsel, Persion and Selvin, Weiner; and

3. On January 23, 1991, the court imposed a sanction, apparently under section 128.5, of $3,175 against Persion and Selvin, Weiner. This sanction arose from Tobin's objection to the sufficiency of an appeal bond in the amount of $7,500. The court described the factual basis for its award in the following terms:

"The court finds that there is no bond/undertaking in existence with respect to the defendants' appeal at present. [¶] The court further finds that the Seven Thousand, Five Hundred Dollar ($7,500.00) bond filed with the court on October 10, 1990 was previously stricken by the court on November 9, 1990. Mr. Clampitt [a member of Selvin, Weiner] was present before the court on November 9, 1990 when the court so ordered. Nevertheless, Mr. Clampitt twenty (20) days later went to the Court of Appeal and misrepresented . . . that the Seven Thousand, Five Hundred Dollar ($7,500.00) bond which was previously stricken by this court on November 9, 1990 was, in fact, in existence."

While these additional three matters are discussed at length in the briefs of the parties, we have no need to address them in detail. Our disposition of this matter on the threshold question of the propriety of the summary judgment forecloses any necessity for our separate consideration of these peripheral issues.[19]

### ISSUE PRESENTED

As the summary judgment which is the subject of this appeal rests entirely upon the factual issues resolved by the trial court's order deeming admitted certain critical matters, the threshold question is whether the trial court committed error in making that order. Put another way, do the provisions of sections 1013a and 2033, as construed and applied by the trial court, justify its determination that Tobin's requests for admission should be deemed admitted. If that question is answered in the negative then the summary judgment necessarily falls.

---

[19]There is one caveat that must be noted here. The misconduct which resulted in the sanction order of January 23, 1991, does not appear, on its face, to necessarily depend on the efficacy of the judgment. However, from this record it is not clear to us whether the trial court would, in light of a reversal of the judgment, still wish to impose that sanction. We will therefore return the matter to the trial court for reconsideration.

Discussion

1. *Standard of Review*

■ Under the procedural posture of this case, the question of the propriety of the trial court's determination, under section 2033, subdivision (k), that 65 of Tobin's 77 requests for admission should be "deemed admitted" is an issue of law. It requires an interpretation of that statute which appellate courts may independently determine. (*Los Angeles County Safety Policy Assn. v. County of Los Angeles* (1987) 192 Cal.App.3d 1378, 1384 [237 Cal.Rptr. 920]; *California Ins. Guarantee Assn. v. Liemsakul* (1987) 193 Cal.App.3d 433, 438 [238 Cal.Rptr. 346].) It may be resolved by us de novo as we are not bound by erroneous legal conclusions drawn by the trial court. The application of a statute to undisputed facts, as we have here, is a matter for independent appellate review. (*Rudd v. California Casualty Gen. Ins. Co.* (1990) 219 Cal.App.3d 948, 951-952 [268 Cal.Rptr. 624].)

As we have already noted, the viability of the summary judgment which is the subject of this appeal depends entirely upon whether the trial court properly granted Tobin's "deemed admitted" motion. The resolution of that question requires us to examine the language of section 2033, subdivision (k), to determine the effect of a service of proposed responses prior to the hearing on the motion. However, to resolve that issue we must first examine and construe section 1013a, subdivision (3), to see if it justifies the trial court's conclusion that there were no "legally effective" responses.

2. *Section 1013a, Subdivision (3) Relates to Proof of Service of Mail and Has No Application Where Actual Service Has Admittedly Been Effected*

■ The trial court justifies its conclusion that there was no legally effective service by the Orises of their original verification on June 22, 1990, because the proof of service form attached thereto erroneously included a mailing date of May 24, 1990. The court cited and relied upon the language of section 1013a, subdivision (3) which states that, "service made pursuant to this paragraph . . . shall be presumed invalid" where there is more than a one-day difference between the date on the proof of service and the postmark date on the envelope. Here, of course, there was nearly a 30-day difference.

■ What both the trial court and Tobin have overlooked, however, is the precise language and the obvious function of this statutory provision. Subdivision (3) of section 1013a relates to the manner in which a party will prove that service by mail was accomplished where the person signing the

affidavit does not have *personal knowledge* of the mailing, but can testify as to the business "practice for collection and processing of correspondence for mailing" of the sender (i.e., the party seeking to establish that a *service by mail* was accomplished). It is only when a party seeks to prove that service by mail has occurred under these specific and limited circumstances that this paragraph would have any application. Further, it would *only* be a consideration where an issue exists as to the service of a particular document; that is, where *proof* of the fact of such service is required. ▮ It logically would have no application where, as in this case, service has been admitted.

The presumption of invalidity, which played such a significant role in the trial court's conclusion, applies, by the express terms of section 1013a, subdivision (3), *only* where service is sought to be *established* under *that* paragraph. As we have no issue as to service in this case, there is no need to be concerned about any particular method of *proving* such service. Thus, neither section 1013a, nor the cited presumption of invalidity contained in subdivision (3), had any place in the trial court's analysis. Indeed, there is no basis in this record for the conclusion that subdivision (3) was even the paragraph on which the Orises purported to rely.[20]

Most importantly, as we have already noted, Tobin's counsel has admitted that he received the original responses and verifications of the Orises on June 25, 1990. Thus, there is no factual basis whatever for the trial court's conclusion that no legally effective service of the Orises proposed responses had been made. The established fact of service cannot be avoided by the obfuscation that it was accompanied by an erroneous service affidavit. We therefore hold that service of the Orises' proposed responses was legally effected not later than June 25, 1990.

One court, speaking in a different factual context, expresses, with only slight paraphrase, our sentiments exactly: "Although we agree that 'strict compliance' with sections 1013 and 1013a is required, we decline to equate 'strict compliance' with absurdity in compliance. The rule of 'strict compliance' is satisfied by substantial, without literal, compliance [citation]; and in light of the fact that the record shows that counsel [for Tobin] admitted that his office received [the original responses] in the mail, we find [Tobin's] entire argument in this respect to be hypertechnical." (*Douglas* v. *Janis* (1974) 43 Cal.App.3d 931, 937 [118 Cal.Rptr. 280].)

---

[20]The record reflects no basis for Tobin's apparent conclusion that subdivision (3) of section 1013a was the required basis for the proof of service (other than the printed but misleading code reference set out just below the title of the form). An examination of the proof of service (of May 24, 1990) utilized by Orises' counsel demonstrates that subdivision (1) was the statutory authority actually relied upon.

Where service by mail has been accomplished and no dispute exists as to the fact or timing thereof, it is an absurd triumph of form over substance for the trial court to rely, as it did here, on the very limited and technical language of section 1013a to first perpetrate and then justify the gross miscarriage of justice which has occurred in this case.

3. *Tobin's Receipt of Proposed Responses Prior to the Hearing on the Motion Was Sufficient to Defeat it*

■■■ Tobin's motion to have 65 requests for admission deemed admitted was heard on July 25, 1990. Over 30 days prior to that date, Tobin's counsel admittedly had received responses from the Orises. Under the provisions of section 2033, subdivision (k), a court must grant a motion to have admission requests deemed admitted where responses have not been served prior to the hearing or, if such responses were served, they were not in substantial compliance with section 2033, subdivision (f)(1).[21]

However, as we read this record, the trial court had no alternative but to find that such a timely service had been made. Similarly, there can be no question that substantially all of the relevant responses were in substantial, if not literal, compliance with section 2033, subdivision (f)(1). That some of the responses were less than clear or complete does not detract from that conclusion.[22] Thus, it was error for the trial court to conclude that Tobin was entitled to have his "deemed admitted" motion granted.

The actual receipt of responses prior to the hearing on Tobin's admissions motion, and the absence of any finding as to a lack of substantial compliance

---

[21] Section 2033, subdivision (f)(1) provides:

"Each answer in the response shall be as complete and straightforward as the information reasonably available to the responding party permits. Each answer shall (A) admit so much of the matter involved in the request as is true, either as expressed in the request itself or as reasonably and clearly qualified by the responding party, (B) deny so much of the matter involved in the request as is untrue, and (C) specify so much of the matter involved in the request as to the truth of which the responding party lacks sufficient information or knowledge. If a responding party gives lack of information or knowledge as a reason for a failure to admit all or part of a request for admission, that party shall state in the answer that a reasonable inquiry concerning the matter in the particular request has been made, and that the information known or readily obtainable is insufficient to enable that party to admit the matter."

[22] Indeed, of the 65 responses which were deemed admitted as a result of the court's order, only 11 can even arguably be considered as *not* in substantial compliance. Those are Nos. 16, 17, 18, 19, 25, 33, 35, 47, 48, 51 and 72. Of these, Tobin complained only of four (see fn. 25, *post*). Another 10 are also questionable, but they were not part of the 65 included in Tobin's original motion (i.e., Nos. 31, 32, 35, 36, 37, 38, 39, 40, 45 and 73). Even if admitted, none of these requests came even close to establishing the Orises' liability much less justifying the foreclosure of a defense.

with section 2033, subdivision (f)(1),[23] is sufficient, as a matter of law, to defeat it. The Orises were not required to show anything else. Certainly, no showing of "mistake, inadvertence or excusable neglect" by them was required. ▋▋▋▋ Such matters play no part in the resolution of a "deemed admitted" motion.[24] Such factors are only relevant under section 2033, subdivision (k), to a party's effort to obtain relief from a waiver of the right to object to requests. That is not the issue presented here.

Until we read the record and the briefs in this case, we would not have thought it necessary for a court to have to make explicit what the Legislature so clearly mandated. Under section 2033, subdivision (k), the court is *required* to grant a deemed admission motion unless a proposed response is served before the hearing on that motion. (*Courtesy Claims Service, Inc.* v. *Superior Court* (1990) 219 Cal.App.3d 52, 55-56 [268 Cal.Rptr. 30].) What the statute does not say, but obviously implies, is that where a proposed response *is* served prior to the hearing (and there is no finding that the "substantial compliance" requirement has not been met), then the motion may *not* be granted. Thus, under the statute, a motion to have admission requests deemed admitted may not be granted where the record establishes, as it does in this case, that (1) proposed responses to the requests have been served prior to the hearing on the motion and (2) such responses are in substantial compliance with the provisions of section 2033, subdivision (f)(1).[25]

---

[23]Contrary to Tobin's assertion in his brief, the referee made no finding on this issue. Indeed, he did not even mention subdivision (f)(1). The referee simply made the broad unsupportable assertion that "the responses," were both unintelligible and "otherwise failed to comply with Code of Civil Procedure sections 2030, 2031 and 2033." Given the status of this record (see e.g., fn. 22, *ante*), we are not inclined to conclude that a supportable finding was made by implication.

[24]At least two motions made by the Orises (one of which resulted in substantial sanctions) were based on section 473. Section 473, however, has no application to the facts of this case. Indeed, the legislative history of the Civil Discovery Act of 1986 makes it clear that the provisions of section 2033, not section 473, will be the means for obtaining any relief from default arising from a failure to respond to a request for admissions. (*City of Fresno* v. *Superior Court* (1988) 205 Cal.App.3d 1459, 1467 [253 Cal.Rptr. 296]; *St. Paul Fire and Marine Ins. Co.* v. *Superior Court* (1992) 2 Cal.App.4th 843 [3 Cal.Rptr.2d 412].) Nonetheless, given the circumstances, we can understand the determination of the Orises not to overlook any possible basis for overturning the trial court's erroneous rulings.

[25]As we have mentioned, four responses (Nos. 25, 47, 48 and 51) have been denounced by Tobin as unintelligible (see fn. 9, *ante*). Our review of the record causes us to conclude that such responses may well be properly subject to a motion for further responses (§ 2033, subd. (*l*)). However, that circumstance does not necessarily support the conclusion that the responses were not in substantial compliance with subdivision (f)(1). In any event, the trial court granted Tobin's motion as to *all* 65 responses without apparently considering that issue or even attempting to distinguish between those responses which were clearly adequate and those as to which there might be some arguable insufficiency.

■ The final objection to these responses raised by Tobin, that there was an improper *joint* response is utterly without merit.[26] While Tobin submitted two separate sets of requests, one for Richard Oris and one for Milly Oris, they were apparently identical (see fn. 4, *ante*). That the Orises chose to respond with a single document containing identical responses, but which was verified under penalty of perjury by *both of them*, does not invalidate their responses; nor would it violate the statutory mandate of a "separate" response. Tobin received all that he was entitled to receive. Each of the Orises responded, each verified their responses and each could be held separately accountable therefore. To require them to have done so on separate pieces of paper would have added nothing but another triumph of form over substance.

CONCLUSION

As we have concluded that the "deemed admitted" motion should not have been granted, it necessarily follows that there was no basis for granting a summary judgment in favor of Tobin. Absent the devastating impact of the order deeming as admitted all 65 of Tobin's requests, including particularly Nos. 52 through 56, there were clearly issues of fact raised by the Orises as to both liability and damages. Therefore, Tobin's motion for summary judgment should have been denied and no judgment should have been entered. In addition, the order of November 9, 1990, adding the Trust and Rich-Mil as judgment debtors obviously cannot stand and must be reversed with the judgment.

While the trial court properly imposed sanctions under section 2033, subdivision (k), as part of its otherwise erroneous order granting Tobin's admissions motion (see fn. 12, *ante*), the two sanction orders subsequently imposed against the Orises and their counsel on September 28 and November 9, 1990, were a direct result of and are necessarily dependent upon, the granting of Tobin's admission and summary judgment motions. Thus, these two orders must fall with the judgment. Our conclusion that the objections to the trial court's rulings, repeatedly asserted on behalf of the Orises, were in fact meritorious and warrant reversal of the judgment is a complete answer to the trial court's determination that such efforts were frivolous and in bad faith.

With respect to the sanction order made on January 23, 1991, it is not obvious to us that reversal of the judgment necessarily compels reversal of that order. Indeed, the sanction appears to be based upon misconduct by counsel which may well merit punishment irrespective of our reversal of the

---

[26]Indeed, the referee's report did not even refer to this objection.

judgment. As we are bound by a trial court's factual determinations, we would, in ordinary circumstances, simply affirm this award as it appears to be supported by substantial evidence[27] and the procedural requirements of section 128.5 appear to have been satisfied. However, given our disposition of this matter, the trial court should have the opportunity to reconsider imposition of this sanction upon remand. That is, the conduct of counsel should be reevaluated in the context of our determination that entry of the judgment was in error.

## DISPOSITION

The judgment is reversed. The order of the trial court dated November 9, 1990, amending the judgment to add the Trust and Rich-Mil as judgment debtors is reversed. The trial court is directed to vacate the restraining order which it issued on November 9, 1990. The orders of the trial court imposing sanctions on the Orises and/or their counsel dated, September 28, 1990, and November 9, 1990, are reversed. The order of January 23, 1991, is reversed with directions to reconsider, in light of our reversal of the judgment, the imposition of this sanction.

The case is remanded to the trial court for further proceedings consistent with the views expressed herein. The Orises, the Trust, Rich-Mil, Persion and Selvin, Weiner shall recover their costs on appeal.

Danielson, Acting P. J., and Hinz, J., concurred.

Respondent's petition for review by the Supreme Court was denied June 11, 1992.

---

[27]We have some hesitancy with this conclusion as our review of the record strongly suggests that the trial court may have been operating on an erroneous factual assumption regarding the actions of counsel which were the subject of the sanction order. In view of our disposition of the matter, however, we need not examine this further. The trial court will have another opportunity to review and consider the issue.