[No. D021204. Fourth Dist., Div. One. Jan. 22, 1997.]

WILLIAM CONWAY, Plaintiff and Appellant, v.
CITY OF IMPERIAL BEACH, Defendant and Respondent.

## COUNSEL

William Conway, in pro. per., Worley, Schwartz, Garfield & Rice and Robert C. Rice for Plaintiff and Appellant.

McDougal, Love, Eckis & Grindle and Lynn R. McDougal for Defendant and Respondent.

## OPINION

NARES, J.—Plaintiff William Conway filed suit for declaratory relief, injunction, damages and writ of mandate against defendant City of Imperial Beach (City). Conway appeals from the judgment entered after City's motion for summary adjudication was granted. After considering the evidence, a statement of undisputed facts, moving papers and argument, the court granted the motion on the ground that City was not obligated to obtain Coastal Commission approval of an interim ordinance, No. 92-864 (Proposition P), in order for it to be effective.

On appeal, Conway contends the trial court erred in granting summary adjudication in favor of City because Proposition P, according to the terms of the Coastal Act, was an amendment to City's local coastal program, and therefore City was required to obtain Coastal Commission certification prior to enforcing the terms of Proposition P. We disagree, and affirm.

### FACTUAL BACKGROUND[1]

Conway is the owner of three properties located within the city limits of City. One property is located at 181 Ebony Street (the Ebony property), one at 272 Elm Street (the Elm property) and one at 580 Florida Street (the Florida property). The three properties are also within the coastal zone and

---

[1]As the facts are undisputed, we abbreviate our recitation thereof.

subject to the provisions of the Coastal Act of 1976 (Pub. Resources Code,[2] § 30000 et seq.) (Coastal Act or the Act). The Coastal Commission has certified City's local coastal program (LCP) for all properties within the coastal zone.

In 1991, before the passage of Proposition P, Conway's three properties were zoned R-HD, a multifamily zone which permitted a maximum density of one dwelling unit per one thousand square feet of building site area. Conway began development plans for the three properties in 1991, applying to City for development permits. Conway was sent a letter on September 18, 1991, by the city attorney, advising him of possible future changes to zoning ordinances affecting density and height requirements.

Conway thereafter was unable to obtain building permits to commence construction on any of his three properties following the passage of Proposition P.[3, 4]

---

[2]All further statutory references are to the Public Resources Code unless otherwise specified.

[3]As to the Ebony property, in November 1991, City granted Conway a coastal development permit, a tentative parcel map and a site plan to permit construction of a four-unit apartment project on the Ebony property. The project conformed with existing R-HD zoning regulations. On August 27, 1992, Conway submitted an application for a building permit for the four-unit apartment project. Between August 27, 1992, and December 14, 1992, Conway submitted the Ebony property plans to City. City reviewed and returned the plans to Conway for corrections three different times. After the plans were submitted on December 14, 1992, City refused to continue processing the Ebony property plans because the Ebony project was not in compliance with Proposition P.

As to the Florida property, on December 14, 1991, City approved a site plan, coastal development permit and tentative parcel map for an eight-unit condominium project on Conway's Florida property. The approvals expired December 23, 1992, unless building permits were issued and substantial construction was commenced. The project and property conformed with R-HD zoning ordinances. On October 15, 1992, Conway applied for a six-month extension of the approvals, which was granted by the planning commission in November 1992. On appeal, however, the extension was denied by City on December 9, 1992.

As to the Elm property, on November 14, 1991, City approved a site plan, coastal development permit and tentative parcel map for a four-unit condominium project on the Elm property. The property and project conformed with R-HD zoning ordinances. The approvals expired January 23, 1993, unless building permits were issued and substantial construction was commenced. On December 11, 1992, Conway sought and was denied a six-month extension by City.

[4]On August 5, 1992, Proposition P qualified as an initiative ballot measure in the City. Proposition P was titled, "ORDINANCE OF THE PEOPLE OF THE CITY OF IMPERIAL BEACH TO TEMPORARILY AMEND THE MUNICIPAL CODE TO LIMIT THE DENSITY AND BUILDING HEIGHT, TO PROHIBIT GAINING GREATER DENSITY OF RESIDENTIAL UNITS BY LOT CONSOLIDATIONS, IN THE MULTI-FAMILY RESIDENTIAL ZONES, AND SEACOAST DISTRICT SPECIFIC PLAN AREA (SP-1) UNTIL A COMPREHENSIVE AMENDMENT TO THE GENERAL PLAN AND LOCAL COASTAL PROGRAM HAS BEEN APPROVED BY NECESSARY GOVERNMENTAL AGENCIES OR TWO YEARS FROM AN ACT, WHICHEVER OCCURS FIRST." Proposition P applied to all

Conway timely filed an application for an appeal on the question of whether he had achieved vested rights on any of his three properties.[5] After a hearing before City, City ruled Conway had not achieved vested rights on any of the properties because building permits were never obtained and there had been no substantial expenditures incurred or construction performed in good faith reliance on the issuance of building permits.

On November 5, 1992, City attempted to transmit Proposition P to the Coastal Commission for certification under the "rapid and expeditious" procedure in the Coastal Act. (§ 30514, subd. (c).) The Coastal Commission rejected City's request because it was of the view that Proposition P was not a "minor" amendment qualifying for rapid and expeditious processing, and City was informed it would have to go through the formal amendment certification process. On November 12, 1992, Proposition P was returned without having been considered.

On December 12, 1992, City determined, without the approval of the Coastal Commission, that Proposition P was effective, and enforcement throughout City began December 14, 1992. Construction and processing on projects City deemed to conflict with Proposition P was halted, and explanatory letters were sent to affected property owners, including Conway.

On January 29, 1993, City received notice from the Coastal Commission that Proposition P must be submitted for certification prior to becoming effective. City, after public hearings, adopted a resolution transmitting Proposition P to the Coastal Commission as an amendment to the LCP. On April 10, 1993, the Coastal Commission, after public hearings on City's application, approved Proposition P (with a minor change) as an amendment to City's LCP.

## PROCEDURAL BACKGROUND

On March 11, 1993, Conway filed a complaint for declaratory relief, injunction, damages for violation of civil rights and a petition for writ of mandate against City. The complaint alleged that City's enforcement of

multifamily zoned property within City. On November 3, 1992, City voters approved Proposition P.

Proposition P is an interim ordinance, enacted under the provisions of Government Code section 65858. It amends the R-HD zone to limit the height of structures to 30 feet, reduce the density by increasing the number of square feet of land required per unit from 1,000 to 2,000 and prohibits lot combinations which would allow a greater density. After passage of Proposition P, Conway's Florida, Elm and Ebony properties exceeded the density and height requirements allowable for an R-HD zone.

[5] Projects with vested rights are exempt from Proposition P (§ 7 of Prop. P).

Proposition P without prior certification by the Coastal Commission was in violation of the Coastal Act and had prevented Conway from securing vested rights by precluding the grant of building permits to Conway to commence substantial construction on his three properties. City filed its answer to the complaint on April 16, 1993, denying Conway's allegations.

On November 12, 1993, Conway and City filed motions for summary adjudication. Conway's motion sought summary adjudication of his first cause of action, for declaratory relief. City's motion sought summary adjudication as to the first cause of action, as well as Conway's fifth (improper initiative) and eighth (injunction) causes of action.

On December 10, 1993, the trial court denied Conway's motion for summary adjudication, and granted City's motion, finding: "The Court interprets the law and the stipulated facts in the manner which supports both the clear intent of the voters in passing Proposition 'P' and the clear intent of the California Legislature in enacting the Coastal Act [citation], and concludes that Defendant . . . CITY OF IMPERIAL BEACH was not obligated to obtain Coastal Commission approval of the interim Ordinance 92-864 initiative know as Proposition 'P,' as claimed in Plaintiff['s] . . . First, Fifth and Eighth Causes of Action, in order for Proposition 'P' to be effective upon enactment."

## STANDARD OF REVIEW

■ We have recently set out the applicable standard of review: "[T]he applicable standard of review on appeal in this case is de novo or independent review. There were no credibility issues at trial and the court decided only the limited question of law [we now review]. As an appellate court, we 'conduct independent review of the trial court's determination of questions of law.' (*Stratton* v. *First Nat. Life Ins. Co.* (1989) 210 Cal.App.3d 1071, 1083 [258 Cal.Rptr. 721].) Interpretation of a statute is a question of law. (*California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699 [170 Cal.Rptr. 817, 621 P.2d 856]; *California Ins. Guarantee Assn.* v. *Liemsakul* (1987) 193 Cal.App.3d 433, 438 [238 Cal.Rptr. 346]; *Los Angeles County Safety Police Assn.* v. *County of Los Angeles* (1987) 192 Cal.App.3d 1378, 1384 [237 Cal.Rptr. 920].) Further, application of the interpreted statute to undisputed facts is also subject to our independent determination. (*Rudd* v. *California Casualty Gen. Ins. Co.* (1990) 219 Cal.App.3d 948, 951 [268 Cal.Rptr. 624].)" (*Harbor Fumigation, Inc.* v. *County of San Diego Air Pollution Control Dist.* (1996) 43 Cal.App.4th 854, 859 [50 Cal.Rptr.2d 874].)

APPLICABLE PRINCIPLES

### 1. *Statutory Construction*

This case is one of first impression. There are no reported decisions on how the coastal planning process prescribed by the Coastal Act relates to the ability of local governments to adopt urgency interim ordinances under Government Code section 65858.[6] Thus, our resolution of the question before us depends on application of the rules of statutory construction. ■ "To resolve whether defendant's interpretation of the relevant statutes is correct, we are guided by familiar canons of statutory construction. '[I]n construing a statute, a court [must] ascertain the intent of the Legislature so as to effectuate the purpose of the law.' (*People* v. *Jenkins* (1995) 10 Cal.4th 234, 246 [40 Cal.Rptr.2d 903, 893 P.2d 1224].) . . . If . . . the terms of a statute provide no definitive answer, then courts may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history. (See *Granberry* v. *Islay Investments* (1995) 9 Cal.4th 738, 744 [38 Cal.Rptr.2d 650, 889 P.2d 970].) 'We must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' (*People* v. *Jenkins, supra,* 10 Cal.4th at p. 246.)" (*People* v. *Coronado* (1995) 12 Cal.4th 145, 151 [48 Cal.Rptr.2d 77, 906 P.2d 1232]; see also *Quintano* v. *Mercury Casualty Co.* (1995) 11 Cal.4th 1049, 1060 [48 Cal.Rptr.2d 1, 906 P.2d 1057].)

As we have recently stated, "it is our duty . . . to construe the true meaning of [the statutes at issue] . . . and to harmonize [them] with the entire statutory scheme of which [they are] a part. (*Merrill* v. *Department of Motor Vehicles* (1969) 71 Cal.2d 907, 917, fn. 15 [80 Cal.Rptr. 89, 458 P.2d 33].)" (*Sea World, Inc.* v. *County of San Diego* (1994) 27 Cal.App.4th 1390, 1406 [33 Cal.Rptr.2d 194], fn. omitted.)

■ In this case, involving an apparent conflict between two statutes, the principle of paramount importance is that of harmonious construction, by which we must attempt to give effect to both statutes if possible: "[O]ur task here is . . . to determine whether . . . there is any possible construction that

---

[6]In *CEEED* v. *California Coastal Zone Conservation Com.* (1974) 43 Cal.App.3d 306 [118 Cal.Rptr. 315], Division Two of this district considered and rejected a challenge to the constitutionality of the Coastal Zone Conservation Act of 1972 (former § 27000 et seq.), now codified as the Coastal Act (§ 30000 et seq.). In so doing, the court noted the permit process established by the Act itself was a type of interim development control, and such interim regulations were specifically authorized under Government Code section 65858. (43 Cal.App.3d at pp. 313-316.)

will harmonize two . . . provisions of equal dignity. As we demonstrate . . . , a harmonious construction of the two provisions does exist and we therefore must adopt that harmonizing construction." (*City and County of San Francisco* v. *County of San Mateo* (1995) 10 Cal.4th 554, 570-571, fn. 8 [41 Cal.Rptr.2d 888, 896 P.2d 181].)

"Moreover, where the language of a statutory provision is susceptible of two constructions, courts should apply the one which will render it reasonable, fair and harmonious with its manifest purpose. (*Western Oil & Gas Assn.* v. *Monterey Bay Unified Air Pollution Control Dist.* (1989) 49 Cal.3d 408, 425 [261 Cal.Rptr. 384, 777 P.2d 157].)" (*Doyle* v. *Fenster* (1996) 47 Cal.App.4th 1701, 1706 [55 Cal.Rptr.2d 327]; see also *Harbor Fumigation, Inc.* v. *County of San Diego Air Pollution Control Dist.*, *supra*, 43 Cal.App.4th at pp. 859-860.)

### 2. *The Coastal Act*

In *Yost* v. *Thomas* (1984) 36 Cal.3d 561 [205 Cal.Rptr. 801, 685 P.2d 1152] (*Yost*), our Supreme Court described in some detail the Coastal Act and the respective roles of local government and the Coastal Commission in the preparation and certification of a local coastal plan: "The Coastal Act of 1976 (Pub. Resources Code, § 30000 et seq.) was enacted by the Legislature as a comprehensive scheme to govern land use planning for the entire coastal zone of California. . . . '[T]he basic goals of the state for the coastal zone' are to: '(a) Protect, maintain, and, where feasible, enhance and restore the overall quality of the coastal zone environment and its natural and manmade resources.' " (*Id.* at pp. 565-566, fn. omitted; see also *City of Chula Vista* v. *Superior Ct.* (1982) 133 Cal.App.3d 472, 480-484 [183 Cal.Rptr. 909], fn. omitted.)

The court further held the wording of the Coastal Act does not suggest preemption of local planning by the state; rather, under the language of section 30005, local governments have the authority to zone land to fit any of the acceptable uses under the policies of the act and have the discretion to be more restrictive than the Act. (*Yost*, *supra*, 36 Cal.3d at pp. 572-573.) Specifically, the court stated, "An amendment which authorizes a use designated as a permitted use in the LCP does not require certification by the Commission; . . ." (*Id.* at p. 573, fn. 9.)

Two means exist for implementing Coastal Act policies. First, most new development in the coastal zone is subject to a coastal development permit. (§ 30600.) Second, all local governments are required to prepare an LCP covering the territory within their boundaries in the coastal zone. (§§ 30109,

30500.) The LCP's consist of a land-use plan, zoning ordinances, zoning district maps and other matter which, taken together, meet the requirements of and implement the policies of the Act. (§ 30108.6.)

Local governments are responsible for creating their LCP's. (§ 30500; *Yost, supra,* 36 Cal.3d at p. 572.) The Coastal Commission was established to review these LCP's and certify the LCP's meet the requirements of the Act.

The Act also provides an LCP may be amended by a local agency, but the Coastal Commission has the authority to review and certify any amendments to the LCP. No amendment to the LCP will become effective until the Coastal Commission certifies the amendment is consistent with the requirements of and implements the policies of the Act. (§ 30514, subd. (a).)

Amendment of an LCP is defined by the Act to include, "but is not limited to, any action by a local government that authorizes the use of a parcel of land other than a use that is designated in the certified local coastal program as a permitted use of the parcel." (§ 30514, subd. (e).)

### 3.   *Interim Ordinances*

Government Code section 65858, set out in full below,[7] establishes an expeditious means to "protect the public safety, health and welfare" by establishing procedures for the adoption of interim, limited duration ordinances.

---

[7]Government Code section 65858 provides:

"(a) Without following the procedures otherwise required prior to the adoption of a zoning ordinance, the legislative body, to protect the public safety, health and welfare, may adopt as an urgency measure an interim ordinance prohibiting any uses which may be in conflict with a contemplated general plan, specific plan, or zoning proposal which the legislative body, planning commission or the planning department is considering or studying or intends to study within a reasonable time. That urgency measure shall require a four-fifths vote of the legislative body for adoption. The interim ordinance shall be of no further force and effect 45 days from its date of adoption. After notice pursuant to Section 65090 and public hearing, the legislative body may extend the interim ordinance for 10 months and 15 days and subsequently extend the interim ordinance for one year. Any extension shall also require a four-fifths vote for adoption. Not more than two extensions may be adopted.

"(b) Alternatively, an interim ordinance may be adopted by a four-fifths vote following notice pursuant to Section 65090 and public hearing, in which case it shall be of no further force and effect 45 days from its date of adoption. After notice pursuant to Section 65090 and public hearing, the legislative body may by a four-fifths vote extend the interim ordinance for 22 months and 15 days.

"(c) The legislative body shall not adopt or extend any interim ordinance pursuant to this section unless the ordinance contains a finding that there is a current and immediate threat to the public health, safety, or welfare, and that the approval of additional subdivisions, use permits, variances, building permits, or any other applicable entitlement for use which is

## DISCUSSION

■ The issue before us is this: May Government Code section 65858 and Public Resources Code sections 30514 be harmonized,[8] or does section 30514 prevent acts under Government Code section 65858 from taking effect prior to review and approval of those acts by the Coastal Commission?

The legislative intent in this matter may be derived from the articulations of the relationship between the Coastal Act and other local government activity. Section 30005 describes the impact of the Coastal Act on the authority of local governments to regulate uses in the coastal zone under their own powers:

"No provision of this division is a limitation on any of the following:

"(a) Except as otherwise limited by state law, on the power of a city or county or city and county to adopt and enforce additional regulations, *not in conflict with this act*, imposing further conditions, restrictions, or limitations with respect to any land or water use or other activity which might adversely affect the resources of the coastal zone.

"(b) On the power of any city or county or city and county to declare, prohibit, and abate nuisances." (Italics added.)

Thus, the Legislature clearly intends that local governments retain authority to regulate land or water uses in the coastal zone when necessary to protect coastal resources. This authority exists so long as the regulations enacted are "not in conflict" with the purposes of the Coastal Act.

Also, section 30514, subdivision (a) provides: "A certified local coastal program and all local implementing ordinances, regulations, and other actions may be amended by the appropriate local government, but no such amendment shall take effect until it has been certified by the commission."

required in order to comply with a zoning ordinance would result in that threat to public health, safety, or welfare.

"(d) Ten days prior to the expiration of an interim ordinance or any extension, the legislative body shall issue a written report describing the measures taken to alleviate the condition which led to the adoption of the ordinance.

"(e) When an interim ordinance has been adopted, every subsequent ordinance adopted pursuant to this section, covering the whole or a part of the same property, shall automatically terminate and be of no further force or effect upon the termination of the first interim ordinance or any extension of the ordinance as provided in this section."

[8]Conway suggests that in a case of conflict among statutes, we should apply the principle that the latest legislative expression controls, here, the Coastal Act. (See, e.g., *People* v. *Superior Court (Romero)* (1996) 13 Cal.4th 497, 526 [53 Cal.Rptr.2d 789, 917 P.2d 628].) Where there is no irreconcilable conflict, however, we need not apply this principle.

For purposes of this section, an amendment to a certified local coastal program includes, but is not limited to, "any action by the local government that *authorizes the use of a parcel of land other than a use that is designated* in the certified local coastal program as a permitted use of the parcel." (§ 30514, subd. (e), italics added.)

Thus, the express provisions of the Coastal Act provide a clear statement of the legislative intent that local governments retain powers to act in ways "not in conflict" with the Coastal Act, and that acts by local governments which do *not* "authorize[] the use of a parcel of land other than a use that is designated" in the LCP need not be construed to be "amendments."

Conway concedes that an urgency ordinance which imposed a total moratorium on all development "would not, in and of itself, be in conflict with the Coastal Act." He urges, however, that Proposition P constituted a change in the intensity of the permitted uses, rather than complete prohibition thereof, and thus it was an "amendment" requiring Coastal Commission certification before it could become effective.

As City correctly notes, the suggestion that a valid urgency measure may only impose a total moratorium, rather than merely effecting, as here, a limitation of an already-permitted use, is without foundation in either law or reason. The single case Conway cites for this proposition does not support it.[9]

Further, local governments exercising their authority under Government Code section 65858 necessarily do so on the basis that ". . . there is a current and immediate threat to the public . . . safety [and] welfare." (*Id.*, subd. (c).) The necessary conclusion is that local governments retain the power to enforce urgency interim ordinances which are not in conflict with

---

[9]Conway relies upon *Silvera v. City of South Lake Tahoe* (1970) 3 Cal.App.3d 554, 558 [83 Cal.Rptr. 698] (*Silvera*), for the proposition that a valid interim ordinance must halt *all* development. That case, however, involved an attempt to positively authorize a formerly prohibited use. There the court held: ". . . These ordinances do not prohibit; they authorize. They permit a use formerly prohibited—construction of a high-rise permanent building. It is thus obvious that the intent of the city counsel was not to adopt any stopgap temporary measure to prevent a use which might interfere with a comprehensive zoning plan later to be adopted. It could only have been, and it was, an attempt to circumvent the statutory scheme of community development by the misuse of a code section framed to maintain the status quo pending the completion of a comprehensive plan." (*Silvera, supra,* 3 Cal.App.3d at pp. 556-557.)

*Silvera* thus did not involve a true "interim" ordinance, but instead involved a "ruse" through which the City of South Lake Tahoe "sought to authorize a high-rise building." (*Silvera, supra,* 3 Cal.App.3d at p. 558.) The case is thus fully distinguishable from this matter.

the Coastal Act, and that only those amendments "authorize[] a use other than that designated in the LCP as a permitted use . . . require certification by the Commission . . . ." (*Yost, supra*, 36 Cal.3d at p. 573, fn. 9.)

Conway and City do not dispute that Proposition P is an effective interim ordinance adopted under authority of Government Code section 65858. Proposition P did not change the permitted use of the R-HD zone, but it maintained R-HD as a multifamily residential zone. What Proposition P did accomplish was only a temporary reduction in density and building heights for multifamily residential zones.

In accordance with City's LCP, the permitted uses of property in the coastal zone were not altered. There was no change in the relative composition of residential, industrial or recreational uses. City, under the authority of section 30005, adopted and enforced additional regulations, not in conflict with the act, which imposed further conditions and restrictions on multifamily residences within the coastal zone.

City's action did not conflict with the Coastal Act because Proposition P protected, maintained and enhanced the overall quality of the coastal zone environment. Proposition P did not alter the utilization or conservation of coastal zone resources, impede public access to and along the coastal zone, or interfere with the priorities established for coastal-dependent or coastal-related development.

For the foregoing reasons we conclude there is no conflict in this case between section 30514 (or other provisions of the Coastal Act) and Government Code section 65858. As the enactment under Government Code section 65858 did not "authorize[] a use other than that designated in the LCP as a permitted use" (*Yost, supra*, 36 Cal.3d at p. 573, fn. 9.), it was not in conflict with the purposes sought to be served by the Coastal Act, and no approval by the Coastal Commission was required prior to enforcement.[10]

Any other conclusion would lead to the absurd consequences that an attempt to advance the purposes of the Coastal Act, which attempt required

[10]We recognize Conway relies for support upon (1) a formal opinion of the Attorney General (70 Ops.Cal.Atty.Gen. 220 (1987)), and (2) an informal opinion of the Attorney General in the form of a letter dated December 9, 1992, to the Executive Director of the California Coastal Commission (Cal.Atty.Gen., letter opn., No. 92-1215 (Dec. 9, 1992).) The formal opinion, however, does not address the issue of interim regulations of the type before us, and thus is of no value as persuasive precedent. The informal opinion concludes Coastal Commission approval is not required before an interim ordinance may take effect "where such an ordinance would not be in conflict with the Act." (Letter opn., No. 92-1215, *supra*, at p. 1.) As we have concluded there is no conflict between the interim ordinance here and the Act, the opinion supports the conclusion we reach, rather than contradicting it.

expeditious action, could be frustrated by the procedures of the very organization, the Coastal Commission, which is designed to advance the purposes of the Act, and thus the very system designed to protect California's coastal resources would be the means by which they were eviscerated.

We hold that an interim ordinance which does not authorize "a use other than that designated in the LCP as a permitted use" (*Yost, supra,* 36 Cal.3d at p. 573, fn. 9) need not be certified by the Coastal Commission prior to implementation and enforcement. The trial court here correctly concluded that approval of the Coastal Commission was not required prior to implementation and enforcement of Proposition P. In approving and affirming that conclusion, we thus "'avoid an interpretation that would lead to absurd consequences.' [Citation.]" (*People* v. *Coronado, supra,* 12 Cal.4th at p. 151.)

## DISPOSITION

The judgment is affirmed. Both parties to bear their own costs on appeal.

Benke, Acting P. J., and McDonald, J., concurred.