[No. B199446. Second Dist., Div. Five. Sept. 19, 2008.]

NORTH PACIFICA LLC, Plaintiff and Appellant, v.
CALIFORNIA COASTAL COMMISSION, Defendant and Respondent.

**COUNSEL**

Warshaw & Pope and Jaquelynn Pope for Plaintiff and Appellant.

Edmund G. Brown, Jr., Attorney General, J. Matthew Rodriguez, Assistant Attorney General, and Joel S. Jacobs, Deputy Attorney General, for Defendant and Respondent.

OPINION

MOSK, J.—

## INTRODUCTION

In 2002, the City of Pacifica (City) issued a development permit to plaintiff and appellant North Pacifica LLC (North Pacifica) authorizing North Pacifica to construct a residential development on coastal property within the City. A City resident filed an appeal with the California Coastal Commission (Commission) challenging the validity of the permit. Ensuing litigation delayed any action on the appeal until December 2005, at which time the Commission determined it had jurisdiction over the appeal and sent out notice of a hearing on the appeal. North Pacifica objected to the notice as untimely, but the Commission proceeded with the hearing—over North Pacifica's protest and without its participation—finding that the appeal raised a substantial issue warranting a subsequent de novo hearing on the merits.

At North Pacifica's request, the Commission postponed the de novo hearing to allow North Pacifica to prepare for the hearing. North Pacifica, however, subsequently objected to the Commission holding the de novo hearing on the ground that the Commission had lost any jurisdiction it may have had over the appeal because of the untimely notice of the first hearing on the appeal. North Pacifica filed a petition for writ of mandate and a complaint for declaratory relief in the trial court seeking to prohibit the Commission from holding the de novo hearing. But before the trial court could rule on the merits of North Pacifica's civil action, the Commission held the de novo hearing on the appeal—again without North Pacifica's participation—and denied the permit application. Thereafter, the trial court held a hearing on the merits of North Pacifica's petition and complaint in the civil action and entered a judgment denying the petition and other claims for relief.

■ North Pacifica appeals from that judgment on several grounds, including the contention that the Commission did not substantially comply with statutory and regulatory notice requirements in connection with the first hearing on the appeal, thereby invalidating all of the subsequent actions taken by the Commission on the appeal and divesting the Commission of any jurisdiction over the appeal. We hold that the Commission substantially complied with the statutory and regulatory notice requirements upon which North Pacifica relies and that, in any event, North Pacifica was not prejudiced by the Commission's technical noncompliance with those requirements. We therefore affirm the judgment.

## FACTUAL BACKGROUND

### A. *Appeal to the Commission*

North Pacifica[1] applied for and obtained a coastal development permit (CDP) from the City in the summer of 2002 authorizing North Pacifica to develop a 43-unit housing project on a site in the City known as the "Bowl" property. John Curtis, a resident of the City, appealed the City's approval of the project to the Commission (Curtis appeal). Because the City contended that its decision to issue the CDP for the Bowl project was not appealable, the Commission scheduled a hearing in December 2002 to determine initially whether the City's decision was within the Commission's appellate jurisdiction. The Commission also suspended the CDP pending the outcome of the appealability determination and any subsequent appeal.

North Pacifica responded by filing actions in state and federal court challenging the Commission's authority to hold any hearings on its CDP. Those actions and related appellate proceedings, which were resolved against North Pacifica and in favor of the Commission, delayed the appealability hearing before the Commission until December 16, 2005. On that date, the Commission determined that the City's decision to approve the CDP was within its appellate jurisdiction. The Commission also determined that the Curtis appeal would be deemed filed as of December 19, 2005, for purposes of calculating the 49-day period within which to set a hearing on the appeal pursuant to Public Resources Code section 30621.[2] Based on that December 19, 2005, filing date, the Commission calculated that it had through and including February 6, 2006, to hold a hearing on the Curtis appeal.

On December 20, 2005, the Commission sent a notice to the City entitled "Commission Notification of Appeal." The notice was addressed to the City planner and identified North Pacifica's CDP and the Bowl project. It also stated that the "Commission hearing date has been tentatively set for January 11–13, 2006 in San Pedro." The notice further required the City to provide the Commission with "copies of all relevant documents and materials used in the [City's] consideration of [North Pacifica's CDP] . . . ." The notice concluded by advising that a "Commission Staff Report and notice of the hearing will be forwarded to you prior to the hearing." The notice was mailed to Keith Fromm, one of the two principals of North Pacifica, at 6114 La Salle Avenue, Oakland, California. Robert Kalmbach, North Pacifica's

---

[1] North Pacifica is a California limited liability company with two principals, Keith Fromm and Robert Kalmbach.

[2] As explained below, Public Resources Code, section 30621, subdivision (a) required the Commission to set a hearing on the Curtis appeal within 49 days of the filing of the appeal.

other principal, explained that the La Salle address was a post office box that Kalmbach maintained on behalf of North Pacifica.

According to the Commission, "staff mailed the [December 20, 2005,] notification to the address on file for North Pacifica, which is the same address to which various previous documents, including both previous meeting notices, had been mailed." Fromm testified, however, that his office is in Westwood, California, that he had recently requested that notices from the Commission be mailed to that address, and that he did not receive the December 20 notice prior to January 5, 2006. Jaquelynn Pope, North Pacifica's outside counsel, also denied receiving a copy of the December 20, 2005, notice prior to January 5, 2006. And Kalmbach testified that although he eventually saw a copy of the December 20 notice when he checked the Oakland post office box on January 5, he did not read it carefully.

On December 28, 2005, the Commission posted the agenda for its January meeting on its Web site.[3] The posted agenda explained that "new appeals" were processed as follows: "When staff recommends [the finding of a] 'substantial issue,' a public hearing on the question will <u>only</u> be held if 3 or more Commissioners ask for it. If three or more Commissioners do not request a hearing on [the] 'substantial issue' [question,] the matter automatically proceeds to de novo public hearing either at this or a later Commission meeting."[4]

On Friday, December 30, 2005, the Commission posted on its Web site the report on the Curtis appeal prepared by the Commission's staff (staff), which report listed the hearing date for the appeal—January 11, 2006—on the first page. The report contained extensive detail concerning the staff's analysis of the issues raised by the Curtis appeal.

On the next business day, January 3, 2006, the Commission mailed out a formal notice of the hearing on the Curtis appeal entitled "Important Public Hearing Notice New Appeal."[5] According to North Pacifica, neither its principals nor its outside counsel received this notice until January 5, 2006.

---

[3] The Commission reported that the posted agenda contained "the precise date of the appeal hearing," but the copy of the agenda in the record does not contain the date of the hearing.

[4] California Code of Regulations, title 14, section 13115, subdivision (a); *Coronado Yacht Club v. California Coastal Com.* (1993) 13 Cal.App.4th 860, 867 [17 Cal.Rptr.2d 10].

[5] The "Important Public Hearing Notice New Appeal" is dated December 30, 2005, but the parties agree that it was not mailed to North Pacifica until the next business day, January 3, 2006. As discussed below, December 30, 2005, was a Friday; January 1, 2006, was a Sunday; and January 2, 2006, was a holiday.

On January 10, 2006, both Fromm—who is an attorney and acts as North Pacifica's corporate counsel—and Pope filed formal, written objections to the hearing on the Curtis appeal. Both objections asserted that the January 3, 2006, notice of hearing on the Curtis appeal violated California Code of Regulations, title 14, section 13063[6] in that it was mailed less than 10 days prior to the hearing and therefore provided North Pacifica with insufficient time to prepare for the hearing. Pope attached to her objection the declarations of two environmental consultants, each of whom stated that he needed more time to prepare for the hearing. Both objections asserted that the Commission lacked jurisdiction to hear the appeal due to the defective notice and demanded that the hearing not take place. Neither objection requested a continuance or proposed alternative dates for the hearing.

The Commission responded the same day, stating that "Commission staff does not understand [North Pacifica's objections to be] requesting postponement of the hearing until a later date. If North Pacifica does wish to postpone the hearing, please notify [the staff] immediately." North Pacifica did not respond to the Commission's letter.

On January 11, 2006, the Commission convened a public meeting at which it addressed the Curtis appeal. In response to North Pacifica's objections, the staff reported to the Commission that "we have asked [North Pacifica], yesterday, whether they would like to request postponement of the hearing, to provide them more time to respond, but we have not heard back from them on that request. In order to postpone, they would have to waive the 49-day hearing rule for an appeal, so lacking that postponement request from [North Pacifica], we are here today. [¶] We have also examined the claim of defective notice that [North Pacifica makes], and while it is true that the paper notice of this hearing was not timely mailed to [North Pacifica], we believe [North Pacifica], nonetheless, had constructive notice of this hearing by other means, including [the] notification of the appeal [that] was mailed to North Pacifica on December [20,] 2005. That notice indicated that the appeal was tentatively set for this date, January 11 through the 13." The staff therefore concluded that "based on our belief that [North Pacifica] had adequate notice of this hearing, as well as time to address the question of whether there are wetlands on the [Bowl project] site, and that they have not

---

[6] California Code of Regulations, title 14, section 13063, subdivision (a) provides in pertinent part: "At least 10 calendar days prior to the date on which the application will be heard by the commission, the executive director shall mail written notice to each applicant, to all affected cities and counties, to all public agencies which have jurisdiction, by law, with respect to a proposed development, to all persons who have requested it, and to all persons known by the executive director to have a particular interest in the application, including those specified in section 13054(a)."

responded to our request to postpone the substantial issue hearing, we are recommending that the Commission consider the substantial issue question. [¶] However, given [North Pacifica's] clear statements about the need for more time to address the merits of the de novo hearing, we would recommend that the Commission postpone the de novo hearing to a later date to allow the applicant sufficient time to prepare."

After considering the recommendations of the Commission's staff and chief counsel, the chairman inquired if there were three or more commissioners who wanted to hold a hearing on the question of whether the Curtis appeal raised a substantial issue. When none of the commissioners requested a hearing, the chairman concluded, "Seeing [no request for a hearing, a] substantial issue is found." The Commission then followed the staff's recommendation and postponed the de novo hearing on the merits of the appeal to allow North Pacifica adequate time to prepare.

On February 13, 2006, Pope wrote to the Commission on behalf of North Pacifica and advised that "[North Pacifica] cannot, as set forth below, even under protest and full reservation of rights, adequately respond to the issues raised by the staff report until after April, 2006."[7] Accordingly, Pope asked the Commission to "please confirm that the de novo hearing will not be calendared for any meeting prior to May, 2006." The Commission thereafter set the de novo hearing on the Curtis appeal for May 11, 2006.

On May 8, 2006, Pope sent the Commission a letter objecting to the Commission holding the de novo hearing on May 11, 2006, on the grounds that "each of the Commissioners [had] violated the Bagley-Keene Open Meetings [sic] Act[8] and the Commission's own regulations" when they found at the January 11, 2006, hearing that the Curtis appeal raised a "substantial issue." Among other things, Pope accused the Commission of engaging in "unfair tactics" in connection with the civil action that North Pacifica had filed in the Superior Court of Los Angeles County on March 10, 2006. According to Pope, North Pacifica had scheduled a hearing on the merits of its civil action—that sought, inter alia, to enjoin the Commission from holding the May 11 de novo hearing—for April 24, 2006, but due to the Commission's filing of a motion to change venue, that hearing had been vacated pending the June 2, 2006, hearing on the Commission's venue motion. Pope demanded that the Commission dismiss the Curtis appeal because the January 11, 2006, substantial issue finding was void, and

---

[7] As discussed below, North Pacifica filed the civil action from which this appeal arises on March 10, 2006.

[8] Bagley-Keene Open Meeting Act; Government Code section 11120 et seq. (Bagley-Keene Act).

the statute of limitations had run on the appeal, thereby divesting the Commission of jurisdiction to hear it.

On May 11, 2006, the Commission convened a public meeting at which it went forward with the de novo hearing on the Curtis appeal. North Pacifica did not attend the meeting or submit any materials for consideration by the Commission. The Commission noted North Pacifica's objections to the hearing and found that the Commission had "substantially complied" with the hearing notice requirements for the Curtis appeal. The Commission then "denied [North Pacifica's] permit application because the [Bowl] project is inconsistent with the policies of the [City's] Local Coastal Program (LCP) concerning protection of wetlands, water quality and ESHA."[9] According to the Commission, the "[p]roject revisions necessary to bring the development into conformity with the certified LCP while feasible, would involve substantial site design and engineering work. Such fundamental project revisions are beyond the scope of project changes typically achieved through Commission-imposed conditions of approval on a permit application. Rather, it is the project applicant's responsibility to revise the project plans to address the issues that the Commission has identified."

North Pacifica did not avail itself of the opportunity to redesign the Bowl project to address the issues the Commission had identified. Instead, it chose to pursue its civil action in the trial court.

### B. *Civil Action*

In March, 2006, North Pacifica filed a petition for writ of mandate and a complaint for declaratory relief in the trial court seeking, inter alia, (i) a writ commanding the Commission to vacate the actions taken at the January 11, 2006, meeting with respect to the Curtis appeal and to dismiss the Curtis appeal; (ii) a judicial declaration that the actions taken by the Commission at the January 11, 2006, meeting with respect to the Curtis appeal were null and void and that by virtue of the defective notice of the first hearing, the Commission had lost any jurisdiction it may have had over the Curtis appeal; and (iii) an injunction prohibiting the Commission from holding a de novo hearing on the Curtis appeal. In June 2006, North Pacifica amended its petition and complaint to add claims challenging the validity of the Commission's actions taken at the May 11, 2006, meeting with respect to the de novo hearing on the Curtis appeal.

---

[9] ESHA is an acronym for "environmentally sensitive habitat areas." (*Sierra Club v. California Coastal Com.* (2005) 35 Cal.4th 839, 845 [28 Cal.Rptr.3d 316, 111 P.3d 294].)

On January 12, 2007, the trial court held a hearing on North Pacifica's petition and complaint. By a minute order entered that same day, the trial court denied North Pacifica's petition and its requests for relief in the complaint. On April 5, 2007, the trial court entered an amended statement of decision and a judgment. In its amended statement of decision, the trial court found that North Pacifica was equitably estopped[10] from challenging the Commission's actions at the May 11, 2006, de novo hearing on the Curtis appeal and that North Pacifica had failed to exhaust its administrative remedies.

North Pacifica filed its notice of appeal from the judgment on May 24, 2007.

## DISCUSSION

### A. *Standards of Review*

As the parties agree, with the exception of the trial court's ruling granting the Commission leave to amend to conform to proof, each of North Pacifica's challenges to the other rulings of the trial court raises issues of law subject to a de novo standard of review because the material facts are undisputed. (See *Lisa M. v. Henry Mayo Newhall Memorial Hospital* (1995) 12 Cal.4th 291, 299 [48 Cal.Rptr.2d 510, 907 P.2d 358] [when the facts are undisputed and no conflicting inferences can be drawn, the issue becomes one of law]; see *Titan Electric Corp. v. Los Angeles Unified School Dist.* (2008) 160 Cal.App.4th 188, 194, fn. 2 [72 Cal.Rptr.3d 570] ["Of course, on issues of law . . . our review is de novo."].) If we were to reach North Pacifica's challenge to the trial court's ruling granting the Commission leave to amend its return to plead equitable estoppel, we would review such a ruling for abuse of discretion. (See *Hunt v. Smyth* (1972) 25 Cal.App.3d 807, 828 [101 Cal.Rptr. 4] ["when an order granting or denying leave to amend is attacked on appeal . . . the reviewing court will uphold the trial court's action unless an abuse of discretion is clearly shown"].)

### B. *Procedures*

The Commission argues that North Pacifica's claims under Government Code section 11130.3, subdivision (a)[11] seeking a writ of mandamus, declaratory relief, and an injunction were procedurally defective. According to the

---

[10] At the hearing, in response to the trial court's comments on the equitable estoppel issue, North Pacifica argued that the Commission had not pleaded equitable estoppel as an affirmative defense in its return. The trial court therefore granted the Commission leave to amend its return to assert an affirmative defense based on equitable estoppel, and the Commission filed such an amended return. North Pacifica challenges that ruling, among others, on appeal.

[11] Government Code, section 11130.3, subdivision (a) provides: "Any interested person may commence an action by mandamus, injunction, or declaratory relief for the purpose of

Commission, North Pacifica was required at the conclusion of the administrative proceedings to raise its contentions by a petition for writ of administrative mandamus under Code of Civil Procedure section 1094.5, instead of by a Code of Civil Procedure section 1085 petition for a writ or by a complaint in equity for declaratory relief. We disagree.

■ The Bagley-Keene Act, in Government Code section 11130.3, subdivision (a), authorizes any interested person to pursue a civil action to nullify state actions taken in violation of Government Code sections 11123[12] and 11125.[13] State actions that violate those open meeting and notice provisions can be challenged by way of mandamus, injunction, or declaratory relief. There is no express statutory language requiring the interested person to proceed by way of administrative mandamus in making such a challenge.

■ The civil action authorized by Government Code section 11130.3, subdivision (a) must be commenced within 90 days from the date the challenged state action was taken. That narrow timeframe for bringing an action to nullify under Government Code section 11130.3 manifests a legislative intent that such actions be commenced and resolved promptly. Requiring an interested party to proceed in court by way of administrative mandamus—as the Commission contends—is impractical in view of the 90-day time limitation especially because the administrative process and preparation of the administrative record alone generally takes more than 90 days from the type of state action challenged here.

North Pacifica's action in the trial court did not challenge the substance of the Commission's findings at either the January 11, 2006, or May 11, 2006, hearings by, for example, contending that those findings were not supported by substantial evidence. Instead, North Pacifica's action sought to nullify the administrative proceedings at which those findings were made by making a direct challenge to the Commission's jurisdiction to hold such hearings. Proceeding in that manner is consistent with the remedial action authorized under Government Code section 11130.3, subdivision (a) and the apparent

---

obtaining a judicial determination that an action taken by a state body in violation of Section 11123 or 11125 is null and void under this section. Any action seeking such a judicial determination shall be commenced within 90 days from the date the action was taken. Nothing in this section shall be construed to prevent a state body from curing or correcting an action challenged pursuant to this section."

[12] Government Code section 11123, subdivision (a) provides: "All meetings of a state body shall be open and public and all persons shall be permitted to attend any meeting of a state body except as otherwise provided in this article."

[13] As discussed below, Government Code section 11125 requires 10 days' advance notice of a public meeting to be sent to all interested persons.

legislative intent behind the creation of such a remedy. North Pacifica was not required to proceed by way of administrative mandamus.

### C. *Statutory Scheme*

■ "The California Coastal Act of 1976 (Coastal Act; Pub. Resources Code, § 30000 et seq.) requires that local governments within the coastal zone prepare a Local Coastal Program (LCP) and implement ordinances to promote the Coastal Act's objectives of protecting the coastline and its resources and maximizing public access. ([Pub. Resources Code,] §§ 30001.5, 30512, 30513; *Landgate, Inc. v. California Coastal Com.* (1998) 17 Cal.4th 1006, 1011 [73 Cal.Rptr.2d 841, 953 P.2d 1188].) 'Local governments are responsible for creating their LCP's. [Citations.] The Coastal Commission was established to review these LCP's and certify the LCP's meet the requirements of the Act.' (*Conway v. City of Imperial Beach* (1997) 52 Cal.App.4th 78, 86 [60 Cal.Rptr.2d 402].) After an LCP is certified by the Coastal Commission, development review authority is 'delegated to the local government that is implementing the local coastal program . . . .' ([Pub. Resources Code,] § 30519, subd. (a); see also *Kaczorowski v. Mendocino County Bd. of Supervisors* (2001) 88 Cal.App.4th 564, 569 [106 Cal.Rptr.2d 14].)" (*Schneider v. California Coastal Com.* (2006) 140 Cal.App.4th 1339, 1344 [44 Cal.Rptr.3d 867].)

■ "Where the local government grants a CDP, the action may be appealed to the Coastal Commission by the applicant, any aggrieved person, or two members of the Coastal Commission. ([Pub. Resources Code,] § 30625, subd. (a).) On appeal, the Coastal Commission reviews the matter de novo and may take additional evidence. ([Pub. Resources Code,] § 30621, subd. (a); *City of Half Moon Bay v. Superior Court* (2003) 106 Cal.App.4th 795, 804 [131 Cal.Rptr.2d 213].) Its jurisdiction, however, is limited. (*City of Half Moon Bay*, at p. 804.) 'The only grounds for appeal are that the locally approved development does not conform to the standards of a certified LCP or the Coastal Act's access policies. ([Pub. Resources Code,] § 30603, subd. (b)(1).)' (*Kaczorowski v. Mendocino County Bd. of Supervisors, supra*, 88 Cal.App.4th at p. 569.)" (*Schneider v. California Coastal Com., supra*, 140 Cal.App.4th at pp. 1344–1345.)

■ "[Public Resources Code s]ection 30621 requires the Commission to provide a de novo public hearing on any appeal brought pursuant to the [Coastal] Act. Section 30621 further provides that a hearing on 'an appeal shall be *set* no later than 49 days' (italics added) following the date the appeal was filed with the Commission. The cited language 'a hearing' includes the

'de novo public hearing' on the merits, because section 30621 contemplates only one hearing as indicated by the language in section 30622 which requires the Commission to act upon an appeal 'within 21 days after the conclusion of *the hearing* pursuant to Section 30621.' (Italics added.) The failure of the Commission to either 'set' a de novo public hearing within 49 days following the filing of an appeal with the Commission or to act upon an appeal within 21 days after the conclusion of the section 30621 hearing results in immediate finality of the appealed decision unless either time limit is waived by the applicant. ([Pub. Resources Code,] § 30625, subd. (b).)" (*Coronado Yacht Club v. California Coastal Com., supra,* 13 Cal.App.4th at pp. 866–867.)

■ "[Public Resources Code s]ection 30625 further provides the Commission shall hear an appeal unless it determines no substantial issue exists . . . . [Citation.] The Commission assumes an appeal raises a substantial issue and proceeds to hear the matter de novo unless three commissioners desire to hear debate on the question of substantial issue." (*Coronado Yacht Club v. California Coastal Com., supra,* 13 Cal.App.4th at p. 867.) "[T]he Commission is required, at a minimum, to make the determination whether a substantial issue exists, i.e., whether the appeal raises a substantial issue meriting an appellate hearing, within the 49-day limitation period." (*Encinitas Country Day School, Inc. v. California Coastal Com.* (2003) 108 Cal.App.4th 575, 585 [133 Cal.Rptr.2d 551].)

The Commission followed the applicable procedures set forth above in response to the Curtis appeal. It set a hearing on January 11, 2006—within the 49-day limitations period—and, because three or more commissioners did not request a hearing on the substantial issue question, the Commission adopted without debate or public comment the staff's recommendation on the substantial issue question. The Commission then postponed the de novo hearing to allow North Pacifica time to prepare. The finding of a substantial issue at the January 11, 2006, hearing satisfied the 49-day requirement of Public Resources Code section 30621. (*Encinitas Country Day School, Inc. v. California Coastal Com., supra,* 108 Cal.App.4th at p. 585.) The Commission therefore had the jurisdiction to conduct the de novo hearing on the Curtis appeal after February 6, 2006—the last day of the 49-day limitations period—unless, as North Pacifica contends, the substantial issue finding was null and void due to faulty notice of the January 11, 2006, meeting. The issue therefore is the consequence of the Commission's untimely notice of the January 11, 2006, hearing.

## D. *Compliance with the Bagley-Keene Act's Notice Requirements*

■ The Bagley-Keene Act requires advance notice to the public and all interested persons of public meetings held by state bodies. Government Code

section 11125 provides in pertinent part: "(a) The state body shall provide notice of its meeting to any person who requests that notice in writing. Notice shall be given and also made available on the Internet at least 10 days in advance of the meeting, and shall include the name, address, and telephone number of any person who can provide further information prior to the meeting, but need not include a list of witnesses expected to appear at the meeting. The written notice shall additionally include the address of the Internet site where notices required by this article are made available. [¶] (b) The notice of a meeting of a body that is a state body shall include a specific agenda for the meeting, containing a brief description of the items of business to be transacted or discussed in either open or closed session. . . ."

■ Although Government Code section 11125 uses mandatory language with respect to the 10-day notice period and the required contents of the notice, Government Code section 11130.3, subdivision (b)(3) expressly provides that a state body may substantially comply with those requirements. "An action [taken in violation of the Bagley-Keene Act] shall not be determined to be null and void if any of the following conditions exist: [¶] . . . [¶] (3) The action taken was in substantial compliance with Sections 11123 and 11125." (Gov. Code, § 11130.3, subd. (b)(3).)

■ In *Regents of University of California v. Superior Court* (1999) 20 Cal.4th 509, 527 [85 Cal.Rptr.2d 257, 976 P.2d 808], the Supreme Court explained that "[Government Code s]ection 11130.3 authorizes the nullification and voidance of an action taken by a state body in violation of the [Bagley-Keene Act's] notice or open-and-public-meeting requirement, but only if: . . . the action was not in substantial compliance with the requirements . . . . [¶] It follows, therefore, that, in enacting section 11130.3, the Legislature had as its purpose to authorize the nullification and voidance of an action taken by a state body in violation of the [Bagley-Keene Act's] notice or open-and-public-meeting requirement, but only under strict conditions. Its purpose evidently arose as it struck a balance between two, at least potentially conflicting, objectives—to permit the nullification and voidance of certain actions, but not to imperil the finality of even such actions unduly. It accordingly chose to craft a powerful weapon, but to restrict its range."

■ In determining whether a state body has substantially complied with statutory requirements "[t]he paramount consideration is the objective of the statute." (*Downtown Palo Alto Com. for Fair Assessment v. City Council* (1986) 180 Cal.App.3d 384, 395 [225 Cal.Rptr. 559].) "Unless the intent of a statute can only be served by demanding strict compliance with its terms, substantial compliance is the governing test." (*County of Tulare v. Campbell*

(1996) 50 Cal.App.4th 847, 853 [57 Cal.Rptr.2d 902].) " 'Substantial compliance . . . means actual compliance in respect to the substance essential to every reasonable objective of the statute.' (*Stasher v. Harger-Haldeman* (1962) 58 Cal.2d 23, 29 [22 Cal.Rptr. 657, 372 P.2d 649], italics omitted.)" (*National Parks & Conservation Assn. v. County of Riverside* (1996) 42 Cal.App.4th 1505, 1522 [50 Cal.Rptr.2d 339].)

The stated objectives of the Bagley-Keene Act are to assure that "actions of state agencies be taken openly and that their deliberation be conducted openly." (Gov. Code, § 11120.) Because Government Code section 11130.3, subdivision (b)(3) allows substantial compliance with the Bagley-Keene Act's notice requirements, the objectives of that act can be served without demanding strict compliance with those requirements. Thus, state actions in violation of those requirements should not be nullified, so long as the state agency's reasonably effective efforts to notify interested persons of a public meeting serve the statutory objectives of ensuring that state actions taken and deliberations made at such meetings are open to the public.

The Commission sent out the "Commission Notice of Appeal" on December 20, 2005—22 days prior to the January 11, 2006, meeting. That notice contained the tentative dates and general location—San Pedro—of the meeting. Although the notice was sent to North Pacifica's Oakland post office box instead of Fromm's Westwood office, the Oakland address was in the Commission's records as a valid address for North Pacifica, and at least some other notices had been sent there on prior occasions. Thus, even if the December 20 notice did not result in actual notice to North Pacifica, it was a reasonable attempt to notify North Pacifica of the date and time of the meeting.

Following the December 20 notice, the Commission posted the meeting agenda on its Web site, followed by a December 30, 2005, posting of the staff report on the Curtis appeal. The former agenda posting advised that there would not be a public hearing on the substantial issue question unless three or more commissioners requested one, and the latter staff report posting not only contained the date of the meeting, it also provided detailed information about the grounds for the appeal. That posted report provided interested persons and the public with detailed information about the substance of the meeting and thus promoted the objectives of the Bagley-Keene Act.

The Commission also sent out the "Important Public Hearing Notice New Appeal" on January 3, 2006, that complied in all respects with the notice requirements of the Bagley-Keene Act, except the 10-day notice period. Following the extended New Year's weekend, the notice was sent eight days

prior to the meeting instead of 10 days. That notice did result in *actual* notice to North Pacifica, albeit only six days prior to the meeting date.

When the Commission's efforts to provide notice of the January 11, 2006, meeting are viewed in the aggregate, they substantially comply with Government Code section 11125. Nothing about those efforts suggests that the Commission was attempting to thwart the objectives of the Bagley-Keene Act by holding a meeting that was not fully disclosed or open to the public. To the contrary, the Commission's actions demonstrate a good faith effort to notify interested persons and the public about the date, location, and purpose of the hearing. In doing so, the Commission acted in a manner that was consistent with the open meeting objectives of the Bagley-Keene Act and thereby substantially complied with the act's notice requirements.

### E. *Prejudice*

 Even if the Commission's efforts to provide notice of the January 11, 2006, meeting did not substantially comply with the 10-day advance notice requirement of the Bagley-Keene Act, such a technical violation does not automatically nullify or invalidate the actions taken at that meeting. To invalidate the Commission's finding of a substantial issue, North Pacifica must show prejudice from the untimely notice of the meeting.

In analogous situations under the Ralph M. Brown Act (Brown Act; Gov. Code, § 54950 et seq.),[14] courts have held that violations of that act do not automatically invalidate the actions taken by a local public entity at the public meeting to which the violations pertain. "Even where a plaintiff has satisfied the threshold procedural requirements to set aside an agency's action, Brown Act violations will not necessarily 'invalidate a decision. [Citation.] *Appellants must show prejudice.*' (*Cohan v. City of Thousand Oaks* [(1994)] 30 Cal.App.4th [547,] 555–556 [35 Cal.Rptr.2d 782] [no prejudice shown from violation of Gov. Code, § 54954.2, subd. (a), which 'requires that an agenda be posted at least 72 hours before a regular meeting and forbids action on any item not on that agenda'].)" (*San Lorenzo Valley Community Advocates for Responsible Education v. San Lorenzo Valley Unified School*

---

[14] "California's open meetings law, the Ralph M. Brown Act (Brown Act) ([Gov. Code,] § 54950 et seq.), requires that the meetings of local legislative bodies be open to the public, except as otherwise provided. ([Gov. Code,] § 54953.)" *International Federation of Professional and Technical Engineers, Local 21, AFL-CIO v. Superior Court* (2007) 42 Cal.4th 319, 333 [64 Cal.Rptr.3d 693, 165 P.3d 488].) "[T]he Ralph M. Brown Act provides a virtually identical open meeting scheme [to that of the Bagley-Keene Act] that is applicable to local public agencies. ([Gov. Code,] § 54950 et seq.)" (*Travis v. Board of Trustees of California State University* (2008) 161 Cal.App.4th 335, 342 [73 Cal.Rptr.3d 854].) "Its purpose and requirements are indistinguishable from the Bagley-Keene Act. (See [Gov. Code,] §§ 54950, 54952.2, 54953.)" (*Id.* at p. 342, fn. 7.)

*Dist.* (2006) 139 Cal.App.4th 1356, 1410 [44 Cal.Rptr.3d 128], italics added.) Because the Brown Act provides a "virtually identical open meeting scheme" to the Bagley-Keene Act (*Travis v. Board of Trustees of California State University, supra,* 161 Cal.App.4th at p. 342), this principle of the Brown Act should apply equally to the Bagley-Keene Act. (See *Southern California Edison Co. v. Peevey* (2003) 31 Cal.4th 781, 799 [3 Cal.Rptr.3d 703, 74 P.3d 795] [reasoning used to interpret Brown Act equally applicable to Bagley-Keene Act].)

North Pacifica has not demonstrated that it was prejudiced by the untimely formal notice of the January 11, 2006, meeting. According to North Pacifica, the delayed notice prevented it from being able to prepare for and appear at the January 11, 2006, meeting to address the substantial issue recommendation of the staff. But, additional notice, no matter how far in advance, would not have permitted North Pacifica to address the Commission regarding the staff's substantial issue recommendation.

Following established procedure, the Commission adopted the recommendation of the staff and found that the Curtis appeal raised a substantial issue. That finding, however, was made without public debate or comment because none of the commissioners requested a hearing on that issue. Thus, even if the Commission had sent out the formal notice of the hearing on the Curtis appeal 10 days in advance of the January 11, 2006, public meeting, North Pacifica could not have changed the outcome on the substantial issue recommendation, no matter how prepared it may have been to address the substantial issue question. As one commissioner correctly observed on January 11, because none of the commissioners requested a hearing on the substantial issue recommendation, the adoption of that recommendation as a finding of the Commission was "automatic." The appeal then proceeded to a de novo hearing on the merits, which hearing the Commission postponed for the express purpose of allowing North Pacifica adequate time to prepare. The postponement provided North Pacifica a full and fair opportunity to contest the staff's recommendations on the merits, including the recommendation on the substantial issue question. Under these circumstances, North Pacifica was not prejudiced by the mailing of the notice less than 10 days prior to the hearing. (See *Benson v. California Coastal Com.* (2006) 139 Cal.App.4th 348, 355 [42 Cal.Rptr.3d 580].)

Even assuming that North Pacifica could have addressed the substantial issue question at the January 11, 2006, meeting, it still cannot demonstrate that it would have been prejudiced by a notice that was mailed two days late. At the January 11, 2006, hearing, the staff identified two subjects that potentially raised substantial issues—the project's impact on wetlands and water quality. Therefore, to prevail on the substantial issue question, North

Pacifica needed to be prepared at the hearing to address *both* of those issues. On the wetlands issue, however, North Pacifica's expert stated in his declaration that he would need at least a month to prepare the study necessary to show that the "Bowl" project would not impact wetlands. Thus, even if the Commission had sent timely notice on December 30, 2005, the expert could not have prepared the required study before the January 11, 2006, meeting. As North Pacifica admits, the notice mailed January 3, 2006, arrived two days later, on January 5, 2006. Thus, if the notice had been mailed timely on December 30, 2005, it would not have arrived until January 3, 2006,[15] leaving North Pacifica's expert only eight days to prepare the study that he claimed would have taken at least a month to prepare. Consequently, the untimely notice did not prevent North Pacifica from being prepared to address the wetlands issue on January 11, 2006.

### F. *Compliance with Regulatory Notice Requirements*

North Pacifica contends that the January 3, 2006, notice also violated the Commission's regulations concerning hearing notices and that such regulatory violation nullified the actions taken on the Curtis appeal on January 11, 2006. For reasons similar to those discussed above in connection with North Pacifica's assertions of Bagley-Keene Act violations, we disagree.

California Code of Regulations, title 14, section 13063, subdivision (a) requires the Commission to mail written notice to all interested parties and entities, including applicants for development permits, "[a]t least 10 calendar days prior" to a hearing on a permit application. Nevertheless, neither the Coastal Act nor the regulations promulgated under it provide a nullification remedy for violations of the regulatory notice requirement. Therefore, unlike the Bagley-Keene Act—which expressly provides a nullification remedy for violations of its notice requirements—the regulations in issue do not explicity authorize the nullification of state actions taken in violation of the regulatory notice requirement.

Moreover, even if the Commission's regulations implicitly authorize nullification of state action taken in violation of the regulatory notice requirement, the Commission, as discussed above, substantially complied with that requirement. (See *County of Tulare v. Campbell, supra,* 50 Cal.App.4th at p. 853 [unless statutory objectives can only be served by strict compliance, substan-

---

[15] Assuming the notice was timely mailed on December 30, 2005, it could not have been delivered prior to January 3, 2006, because January 1 was a Sunday, and the following Monday, January 2, was a holiday.

tial compliance is acceptable].) As distinguished from the notice requirements of the Bagley-Keene Act, the regulatory notice provision in issue does not specify any particular content for a hearing notice. It merely requires written notice of a hearing to be mailed 10 days in advance of the hearing on a permit application. (Cal. Code Regs., tit. 14, § 13063.) It is undisputed that the Commission mailed the December 20, 2006, notice containing the tentative dates and general location of the hearing on the Curtis appeal to North Pacifica more than 10 days prior to the January 11, 2006, meeting, albeit to North Pacifica's Oakland post office box. Arguably, that notice strictly complied with the regulatory notice requirement because it specifically referenced the Curtis appeal, the Bowl project, and the potential dates and location of the hearing—the basic information necessary for an interested person either to appear at the hearing or to at least make further inquiry of the Commission concerning the details of the hearing. Moreover, when the December 20 notice is considered together with the Commission's other attempts to provide notice to North Pacifica, that notice, at a minimum, substantially complied with the notice requirement in the Commission's regulations. And, even if the Commission's attempts to comply with the regulatory notice provision fell short of substantial compliance, North Pacifica cannot show prejudice from that regulatory violation for the same reasons discussed above in connection with the Bagley-Keene Act.

## G. North Pacifica's Other Contentions

North Pacifica raises other contentions on appeal, such as the trial court's rulings on equitable estoppel, exhaustion of administrative remedies, and leave to amend. North Pacifica's contentions as to each of those other issues, however, are predicated on its primary theory that the untimely notice of the January 11, 2006, meeting nullified the actions taken at that meeting, and that the Commission was thereafter divested of any further jurisdiction to act on the appeal when it failed to set a valid hearing on the appeal within the 49-day limitations period.

Based on our conclusions concerning substantial compliance and prejudice, the Commission's actions at the January 11, 2006, meeting were not null or void, and the Commission was therefore fully authorized to act at the May 11, 2006, de novo hearing. Thus, we do not reach North Pacifica's contentions concerning the trial court's rulings on estoppel, exhaustion, or leave to amend because we base our conclusion on other reasons. (See *In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32 [51 Cal.Rptr.2d 444, 913 P.2d 473] ["We are required to uphold the ruling [of the trial court] if it is correct on any basis, regardless of whether such basis was actually invoked."].)

## DISPOSITION

The judgment of the trial court is affirmed. The Commission is awarded its costs on appeal.

Armstrong, Acting P. J., and Kriegler, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 23, 2008, S167922. Werdegar, J., did not participate therein.